Whinney, Appellant, *v.* Public Service Commission.

Argued November 14, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Harold S. Shertz,* for appellant.

*E. Everett Mather, Jr.,* with him *Paul H. Rhoads, Samuel G. Miller* and *John Fox Weiss,* for appellee.

OPINION BY BALDRIGE, J., February 1, 1935:

These four appeals from orders of the Public Service Commission, involving substantially the same questions, were argued together, and will be considered and disposed of in one opinion.

On June 29, 1923, J. G. Whinney filed an affidavit with the Public Service Commission, setting forth that on January 1, 1914, the effective date of the Public Service Company Law, he had been in business as a common carrier of goods and merchandise, by motor truck, which business had been engaged in continuously thereafter. The nature of the business was described as that of "general hauling of goods and

merchandise in and about the city of Philadelphia and, in the course of said business to points and places outside of the city of Philadelphia in Call and Demand service, and as such common carrier desires to be registered with the Public Service Commission," etc., under the name and style of "Whinney's Express"; that he was operating four trucks with a total capacity of 15½ tons. That action was in accordance with the practice then existing. Now a petition is required to be filed and a hearing had. The appellant took no further steps to procure authority for his subsequent operations until the Certificated Motor Carriers and Reading Company, in which the Reading Transportation Company joined, filed complaints against him, on March 4 and March 6, 1934, alleging that he was engaged in common carriage without the necessary certificate of public convenience. Then on March 14, 1934, he filed two combination applications, which are now before us, for registration, based upon his operations before 1914, and a certificate for additional rights beyond those performed January 1, 1914, upon a showing of service performed as the result of the natural progress and development of his business.

The first of these applications, covered by appeal No. 513, October Term, 1933, folder No. 1, sought the issuance of a certificate of public convenience for the privilege of operating as a common carrier, between points within the county of Philadelphia, and such parts of the counties of Delaware, Chester, Montgomery and Bucks as lie within a line passing through and including Marcus Hook, West Chester, Norristown, and Bristol, in so far as the same may be necessary to cover any expansion of business as conducted prior to January 1, 1914.

The second application, covered by appeal No. 514, October Term, 1933, folder No. 2, sought the right to transport goods for the American Stores Company be-

tween Philadelphia and any point in an area including Marcus Hook, Lancaster, Chambersburg, Johnstown, Pittsburgh, Lock Haven, Williamsport, Scranton, Easton and other places. The right was sought also to haul machinery for the firm of Proctor and Schwartz between Philadelphia and places within a radius of 150 miles, and to transport containers for the Liquid Carbonic Company between Philadelphia, Harrisburg, Highspire, Newville and Oxford; leather for the Pine Grove Tanning Company from Pine Grove to Littlestown, Lebanon and Reading; paper for the J. C. Blair Company from Huntingdon to Philadelphia; newspapers for the Curtis-Martin Publishing Company from Philadelphia to Columbia, York and intermediate points; and asbestos, shingles, sheathing and roofing materials for the Keasby-Mattison Company from Ambler to points within 100 miles.

The appellant's applications at folders Nos. 1 and 2 were granted by the Commission as prayed for, subject to certain limitations and conditions. The former, to which we will refer later, only are involved.

The commission, upon the two complaints filed, entered cease and desist orders, which are the subject of appeals 515 and 516, October Term, 1933.

The evidence at folder No. 1 was limited entirely to the right to register, as no shipper witnesses were called to testify of their need for the appellant's services, and his own testimony was confined to describing his operations. The commission, therefore, was within its rights to limit the appellant to the use of four trucks, which is the number he stated in his affidavit were in use in 1923. The commission states in its brief that if it should develop that this local service requires more trucks, the appellant may, by showing the public necessity, procure the removal of this limitation. There is no sufficient reason advanced for disturbing the order made at that folder.

The real controversy before us at folder No. 2 is the confining of the appellant in his operations for the American Stores Company to points within 80 miles of the city of Philadelphia. There was the further question in regard to a possible limitation imposed by the commission to the use of four trucks mentioned at folder No. 1; but the commission concedes that the more extended service granted at folder No. 2 was not restricted to a certain number of vehicles. That controversy, therefore, is eliminated.

Under article III, section 12, of the Public Service Company Law, approved July 26, 1913, P. L. 1374 (66 PS §311), "Every public service company shall be entitled to the full enjoyment and exercise of all and every the rights, powers, and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise expressly provided."

Did the commission limit, abrogate, or modify the rights, powers and privileges, consisting of a call and demand nature or character, previously enjoyed by the appellant?

The appellant testified that in 1913 he began to haul merchandise for the Acme Tea Company and other chain stores, which subsequently merged with the present American Stores Company, wherever there was a demand for his services. But, in answer to the question whether, prior to 1914, he ever rendered services beyond the limits of Philadelphia County, he said: "I could not tell you that, I don't remember back that far." He expressly admitted that he never had hauled for the American Stores Company from Philadelphia to Wilkes-Barre, Johnstown, Altoona or Williamsport. Later in his testimony, he placed Nazareth as the most distant point of delivery, which is about 65 miles from Philadelphia. It is significant that in the acknowledgment made by the secretary of the commission at

the time of filing the affidavit in 1923, he described it as an affidavit purported to show transportation "in the city of Philadelphia and points in the vicinity thereof." At the hearing, the appellant, through his counsel, stated that he did not question, and he would stand on, that acknowledgment or order.

The appellant argues that such distant points as Wilkes-Barre, Williamsport, Johnstown, and Pittsburgh come within the meaning of the term "vicinity." While that word does not seem to have a fixed standard of meaning, or denote any particular distance, it is quite apparent in the connection it was used that it was not contemplated that the appellant had the privilege to extend his services so that he could operate anywhere within the confines of the Commonwealth, depending only on his expansion of business.

The commission was entirely warranted, in view of the evidence offered, in finding that the appellant's operations prior to 1914 did not extend to a point farther from Philadelphia than Nazareth. The order, therefore, did not reduce the rights, powers and privileges enjoyed by the appellant on January 1, 1914.

The appellant's contention is without force, that, if he was engaged in a call and demand trucking business in 1914, however restricted in area, he may extend his operations without the approval of the commission provided only that it is shown necessary to cover any expansion of business conducted prior to January 1, 1914, if it is of a call and demand nature. Sections 2 and 3, article III (66 PS §181, 182), and section 18, article V, (66 PS §681) of the Public Service Company Law, clearly provide that any additional rights, powers, franchises, or privileges are subject to the approval of the commission.

The appellant calls to our attention Coplay Cement Mfg. Co. v. P. S. C. et al., 271 Pa. 58, 114 A. 649; City Transfer Co. v. P. S. C. et al., 93 Pa. Superior Ct. 210;

Hostetter v. P. S. C., 110 Pa. Superior Ct. 212, 168 A. 493; and Mullin v. P. S. C. et al., 113 Pa. Superior Ct. 212, 172 A. 486, to support its contention. But none of those cases grants the right to extend its business and carry it into new territory, regardless of the effect of that action upon competitors or the public good.

The Coplay case involved the right to increased rates. The court there recognized that the authority given to the commission should be liberally construed, and, in the course of its opinion, said: (page 63): "Where, therefore, the unrestricted exercise of existing powers tends to nullify the commission's control, a restrictive use is intended, its extent to be determined by the commission."

In the City Transfer case, we said to the effect that if it exercised that power as a common carrier at the date of the Public Service Company Act, it may continue to do so without permission of the commission; but any extension of that exercise, which results in competition with other public service companies under the jurisdiction of the commission, can only be begun after appellant has applied to the commission and secured its certificate of public convenience, in accordance with the provisions of the act.

Nor are the Hostetter and Mullin cases in conflict with that decision. We returned those cases for more definite findings, so that evidence could be introduced upon which to base a determination whether the appellants had been deprived of a lawful right that they enjoyed prior to 1914.

In York Haven Water & Power Co. et al. v. P. S. C. et al. 287 Pa. 241, 134 A. 419, the Supreme Court clearly and expressly said, that since the date of the Public Service Act, a public service company cannot, without the approval of the commission, invade a new territory served by another company.

As the commission extended the appellant's opera-

tions into a greater territory than he served in 1914, he cannot, without showing the public convenience or necessity, successfully charge the commission with abusing its discretion in not further extending his right to operate in additional territory. We might add that it was clearly established that the American Stores Company may have its goods promptly and satisfactorily transported by other certificated truck operators and railroads—so that there was not established a public need for the appellant's services. The right of the commission to impose conditions designed to prevent undesirable competition, which would result if appellant's position were sustained, has heretofore been upheld by this court: Andrews v. P. S. C., 88 Pa. Superior Ct. 306.

The appellant complains also of the failure of the commission to report findings of fact or reasons for its conclusions. It is true that we have impressed upon the commission the importance of stating definite and specific findings to support its final conclusions for information of the parties and to aid this court in determining whether they are self-sustaining. We would be disposed to return this case for that reason, but we have no difficulty here, as in Hostetter v. P. S. C., supra, in determining that the evidence was sufficient to sustain the conclusions reached by the commission, as the appellant, on whom the burden rested, failed completely to establish that he rendered service beyond a 65-mile limit from Philadelphia prior to 1914.

It follows, from what we have heretofore said, that the orders for the appellant to cease and desist from any operations in excess of his recognized rights were properly entered.

The assignments of error are overruled, and the order of the Public Service Commission in each of these several appeals is affirmed, at the cost of the appellant.