Phillips, Appellant, *v.* Public Service Commission.

Argued March 12, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

342

Richard V. Zug, with him Guy Stewart and Harold S. Shertz, for appellant.

Harry H. Frank, with him John C. Kelley, Samuel Graff Miller and Richard J. Beamish, for appellee.

Opinion by Parker, J., April 22, 1937:

The Public Service Commission of Pennsylvania in March, 1935, instituted on its own motion an inquiry and investigation for the purpose of determining whether Glen Phillips had violated the provisions of the Public Service Company Law. After a hearing the commission found that the respondent had operated between points in this Commonwealth as a common carrier of freight without a certificate of public convenience, issued a cease and desist order, and certified to the Secretary of Revenue two of respondent's vehicles for the suspension of the 1936 registration licenses. Phillips has appealed to this court from that order and the question now involved is whether there is sufficient evidence in the record to sustain the finding of the commission that he operated as a common carrier. He admits the operation of motor vehicles but contends that he acted as a private carrier only.

The complainant, to make out a case, depended almost exclusively upon the testimony of respondent Phillips who was called as on cross-examination. There is, therefore, no serious disagreement as to the facts but there is some dispute as to the inference to be drawn from respondent's testimony. The father of the respondent had formerly engaged in a trucking business without a certificate and an application for authority

so to operate as a common carrier was refused him. Glen Phillips had been employed as one of his drivers. After a cease and desist order, the senior Phillips abandoned his business and the business of respondent as a carrier had its start after the father ceased to operate.

Glen Phillips has a terminal platform in Reading which is operated under the name of Mideastern Distributing Company. A number of certified carriers make use of the facilities furnished, which include telephone service, the service of a girl in the office to answer telephone calls, and the privilege of having freight brought to the platform where it is checked and turned over to a carrier. For this service payment is made by the carriers. The appellant did not solicit orders for these carriers and received no commissions from them. When one wished service he would call over Mideastern's telephone for the particular carrier he wished to employ. We do not understand that the commission predicated its conclusions in any respect on the service that was furnished at the terminal and no order was made as to such business. Testimony was received with reference thereto in order to give the general surroundings and to explain other testimony.

Appellant owns two trucks and a trailer and has been serving three customers under special contracts, two of them oral and one in writing. He has rendered to the Pottstown Metal Products Company a service which is exclusively interstate and to two other companies, the Reading Foundry and Supply Company and Blandon Broom Works, an intrastate service. Appellant served the Hyde Park Bedding Company until 1935 when he gave up that contract and took on the Blandon Broom Works. The last named concern, in order to supply a full load from Philadelphia to Reading and thus secure a lower transportation charge, engaged to haul between the same points supplies for the West

Reading Broom Company. This was an arrangement initiated by Blandon and paid for by that company without any suggestion from appellant. Even that service was discontinued some time before the hearing.

Dorothy Phillips, wife of appellant, is the owner of a truck and trailer. She has been employed part of her time in the office of Mideastern Distributing Company. When appellant gave up his contract with the Hyde Park Bedding Company, it was taken over by her and she has been serving that company. In cases of emergency due to breakdowns or lack of available facilities, Phillips and his wife have loaned their trucks to each other. Each has separate bill heads and they keep separate books. Each likewise paid for the gasoline used in the owner's truck but at times the profits were placed in a common fund and used for family expenses.

That one may engage as a carrier in the movement of freight without becoming a common carrier and thereby making himself or his business subject to regulation under the Public Service Company Law of this state is admitted and it has frequently been so decided. As has often been pointed out in other cases, "it is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment": *Michigan P. U. C. v. Duke*, 266 U. S. 570, 577, 45 S. Ct. 191, 193; *Frost v. R. R. Commission of Cal.*, 271 U. S. 583, 592, 46 S. Ct. 605, 607; *Washington v. Kuykendall*, 275 U. S. 207, 210, 48 S. Ct. 41, 42.

There are two definitions of the term common carrier given at an early date which have not been improved upon in all the discussions of this subject. Chief

Justice GIBSON, in *Gordon v. Hutchinson,* 1 W. & S. 285, said that "any man undertaking to carry the goods of all persons indifferently" is a common carrier. The Chief Justice of Massachusetts, in *Dwight v. Brewster,* 18 Mass. 50, 53, expressed the same thought thus: "A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place." As our Supreme Court has said, "we express a doctrine universally sanctioned when we say, that anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier": *Lloyd v. Haugh,* 223 Pa. 148, 154, 72 A. 516. The character of the service may be exhibited both by actually rendering service and by an offer to furnish service, that is, by the manner in which the carrier holds himself out to the public.

The commission, to sustain its order depends on findings to the effect (1) that respondent operated three trucks (one of which is the property of his wife who has pretended to operate it as her individual enterprise); (2) that respondent has been serving four concerns and his wife one; (3) that he has rendered service to the limits of his capacity; (4) that respondent had at a former time engaged in the general hauling business to such an extent that the commission had decreed that he was a common carrier of property by motor vehicle and had issued a cease and desist order against him; (5) that respondent had maintained an advertisement in a telephone directory giving his occupation as a "contract carrier". From these premises the commission concluded: "Respondent has been holding himself out to the public as ready to undertake, for hire or reward, the business of transporting goods from place to place in Pennsylvania. He has so invited custom of the public, even though he serves only

a limited number of patrons and has occasionally refused to perform service for others. The service respondent is rendering is not casual, infrequent or incidental to any other business he is engaged in at this time. It is his regular business and is so carried on by him."

The complainant, to sustain the burden of proof showing that Glen Phillips was operating as a common carrier, depended upon the testimony of the respondent called as on cross-examination. Such being the case it was bound by the evidence so produced insofar as the testimony of respondent was not contradicted. Such testimony discloses, and without contradiction, that Glen Phillips owned and operated but two trucks and a trailer and that the third truck was owned and operated by his wife. With reference to the extent of the service rendered, the complainant relies upon respondent's relations with Reading Foundry and Supply Company, Blandon Broom Works, Pottstown Metal Products Company, and West Reading Broom Company, and the service performed by the wife for one customer, the Hyde Park Bedding Company. The service performed for the Pottstown Metal Products Company was exclusively interstate service which called for the employment of special equipment. As we have pointed out, the respondent did not contract orally or in writing to perform any service for the West Reading Broom Company. Respondent's relation to the last named company had no bearing upon the character of service, whether public or private. The undisputed evidence is that certain material required by the Blandon Broom Works was likewise required by the West Reading Broom Company and that Blandon, on its own initiative, arranged to transport this material from Philadelphia to Reading in order that the companies might provide a truck load lot on each shipment and thus reduce the cost of transportation. This was an arrange-

ment entirely between the broom companies and could not affect the character of service rendered by the respondent. There is not any ground for the inference that this arrangement was a subterfuge. The result is that the proofs establish the fact that the respondent has been furnishing transportation facilities to but three concerns and his wife such service to one concern.

The commission, in its report and in support of its findings, says: "Respondent offers his service in the Reading telephone directory as a 'contract carrier.' When examined as to this notice, he testified that it was because the advertisement 'doesn't cost anything,' and further that 'if the occasion arose where I could secure a contract which would better my condition, over and above the present contracts which I hold, if I could do so without letting my shipper down, I would take a new contract and drop the one which I now hold.' "

The argument in the brief of the commission refers to advertisements in the Reading telephone directory for the years 1934 and 1935. The 1934 advertisement did not concern this respondent except insofar as he was interested in the loading platform and telephone and clerk service furnished by Mideastern Distributing Company. The advertisement for the year 1935 was also primarily an advertisement of that distributing company giving the location of the platform and the telephone number. It gave a list of the certified carriers who took advantage of its facilities and added, "Glen Phillips, Contract Hauling, Reading." When respondent was examined as to this notice he testified as he is quoted by the commission. He also attempted to show that the last advertisement was published without his approval. When we examine the advertisement with respect to the business of hauling, we find that it only advertised the fact that he was a contract hauler, a term which is capable of different interpretations. The advertisement must be read in the light

of the circumstances. It was in a telephone directory and was intended to make conspicuous the telephone number where the Mideastern was conducting its business and was made on behalf of those using its facilities, all of whom were certified carriers with the exception of Glen Phillips. We do not think that this was sufficient to warrant a finding that the appellant was tendering his services as a common carrier. The proofs elicited by the complainant showed that, as a fact, Phillips was not seeking the custom of shippers generally. There is not only no evidence that he ever served any but special persons with whom he contracted, but there is a large amount of undisputed evidence that he refused to serve anyone else. We apply the same rule here to the complainant that we did to a carrier in the case of *James v. P. S. C.*, 116 Pa. Superior Ct. 577, 585, 177 A. 343, where we said: "The true character of the appellant's operations is to be determined by what he is doing rather than by what he says he is doing." When we consider the advertisement in the light of the facts, we find no support for the inference that Phillips was offering his service as a common carrier or offering to serve the public generally. In any event, as he has not done so he is not a common carrier.

We have several times approved the following quotation from 51 Corpus Juris 5: "The public or private character of the enterprise does not depend, however, upon the number of persons by whom it is used, but upon whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make of it a private undertaking if the public generally has a right to such use." As the Supreme Court pointed out in the case of *White v. Smith,* 189 Pa. 222, 228, 42 A. 125, the essential feature of

a public use is that it is not confined to privileged individuals but is open to the indefinite public. The indefinite or unrestricted quality is the characteristic that gives to a service its public character. Consequently, the mere rendering of service to a limited number of persons is not proof that the one rendering the service has devoted his facilities to a public use. On the other hand, the very fact that he has limited his actual service as well as his offering to serve to a privileged few is some evidence that such a one is not a public carrier. We do not regard it of great importance whether Glen Phillips accommodated three concerns and his wife one or whether they together accommodated four, for it does not indicate any actual difference in the character of the service rendered. We have not relied in our conclusions upon the uncontradicted proof by a number of witnesses called by Phillips that he has consistently refused to serve others than the three persons with whom he has dealt. This evidence, however, would tend to corroborate the statements of Phillips when called on cross-examination by the complainant. We search the record in vain for any evidence that the plaintiff has recently served or offered to serve any others than those with whom he has contracted and to whom we have referred. In such a situation the evidence will not support a finding that Phillips was either serving or holding himself out as ready to serve the indefinite public.

We do not find any merit in the suggestion that the respondent by furnishing service to the extent of his capacity made himself a public carrier. Where one offers to serve the public indifferently he may be a common carrier even though his facilities are limited and he cannot accommodate all who call upon him. It does not follow that one who uses all of his facilities in a service as a carrier thereby becomes a public carrier nor do any of the cases so hold. Another auxiliary

rule referred to in the argument is to the effect that one who is a common carrier may not relieve himself from his duty to serve the public indiscriminately merely by refusing service to some persons. This lends no support to the suggestion that a refusal by a carrier to so serve affirmatively proves him to be a common carrier.

Reliance is also placed by the commission on the fact that a former order to cease and desist had been issued against this defendant. All the proofs that are in the record on this subject are to the effect that the respondent was not the owner of the business against which the cease and desist order was issued but that such business was owned by his father. However, when respondent embarked in his present business he notified the old customers of his father that he could not serve them.

Our conclusions have strong support in the decision of the United States Supreme Court in *Michigan P. U. C. v. Duke,* supra. There Coral W. Duke had contracted with three concerns for the transportation of automobile bodies. He employed 75 men and operated 47 motor trucks and trailers upon the public highways of Michigan in transporting goods between points in two states. The Supreme Court said (p. 576) : "Plaintiff is a private carrier. His sole business is interstate commerce, and it is limited to the transportation covered by his three contracts. He has no power of eminent domain or franchise under the state, and no greater right to use the highways than any other member of the body public. He does not undertake to carry for the public and does not devote his property to any public use. He has done nothing to give rise to a duty to carry for others. The public is not dependent on him or the use of his property for service, and has no right to call on him for transportation."

Our conclusion is that there is no evidence in the

record that will support the finding of the commission that Glen Phillips has been operating as a common carrier of freight.

The conclusion at which we have arrived makes it unnecessary for us to consider the further argument of the appellant that the order of the Public Service Commission to the Secretary of Revenue for suspension of registration of the motor vehicles of appellant is in violation of Article VI, §1, of the Public Service Company Law.

The legislature has not undertaken to limit the use of the public highways by private carriers for hire, which they probably could do in an exercise of the right to regulate the use of public streets and roads, and the only general control given by statute over the activities of public or private carriers is through the Public Service Company Law. We recognize the fact that the commission is frequently confronted with difficult problems due to the operations of private carriers of freight and that the activities of such carriers give rise to problems that are not present in dealing with those having the right of eminent domain or those who have dedicated their facilities to a public use. The number of the former is much larger and the commission has found it necessary at times in issuing certificates to limit the fields of operation and the persons to be served. In those cases the carrier voluntarily submits himself to regulation and assumes to act as a common carrier, but a private carrier cannot be made a public carrier against his will. The difficulties arise by virtue of the law and not through the fault of the commission.

The order of the Public Service Commission is reversed.