## Puhl et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued November 21, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Richard V. Zug,* with him *Harold S. Shertz,* for appellants.

*Harry H. Frank,* with him *Harry M. Showalter,* for appellee.

*James H. Booser,* with him *Gilbert Nurick* and *Sterling G. McNees,* of *McNees, Hollinger & Nurick,* and *L. K. Connell* and *H. Z. Maxwell,* for intervening appellees.

OPINION BY PARKER, J., March 2, 1940:
The Public Utility Commission refused an application of Puhl and Falconer for a contract carrier permit

under the so-called "Grandfather" clause of the Public Utility Law, and the applicants have appealed from the order so made. We think the application should have been granted.

The commission, in disposing of the matter, after hearing, treated the application as if it were one for permission to act as a common carrier and assigned as a reason for the refusal of the permit that "the applicants have failed to establish ...... that approval of the application is necessary or proper for the service, accommodation or convenience of the public." Recognizing this error, the commission filed a supplemental order giving different reasons for the refusal. An appeal was taken from that order and, at the request of the commission, this court returned the record to it for further findings. A new order was then made by the commission and this appeal was taken. As we view the matter, the commission in its final order persisted in its original error and while undertaking to treat the application as made under the "Grandfather" clause, actually applied principles fitting in a petition for a certificate by one who had no existing or preferential rights.

Prior to enactment of the Public Utility Law (Act of May 28, 1937, P. L. 1053), the commission was not charged with control over the operation of private carriers as distinguished from common carriers: *Phillips v. P. S. C.,* 127 Pa. Superior Ct. 341, 344, 191 A. 641. By that act common carriers and contract carriers by motor vehicles are defined, and section 804 (66 PS §1304) requires every contract carrier by motor vehicle to have a permit issued by the commission. The latter section contains the proviso, "That, if any such carrier, or a predecessor in interest, was rendering service as a bona fide contract carrier by motor vehicle upon the effective date of this act, over any route or within the territory for which application is made, and has rendered such service since that date, ...... the commission shall issue such permit without further proceed-

ings, if application for such permit is made to the commission as provided in paragraph (b) of this section and within one hundred twenty days after the effective date of this act."

Within one hundred twenty days of the effective date of the act, J. R. Puhl and L. M. Falconer, partners doing business as Puhl and Falconer, applied for a contract carrier permit asking the right to transport merchandise by two trucks for three firms, Superior Steel Corporation, located at Carnegie, Pennsylvania, near Pittsburgh, L. H. Parke Company, having warehouses at Philadelphia and Pittsburgh, and H. J. Heinz Company, having its principal office in Pittsburgh. The routes were principally between Pittsburgh and Philadelphia and from Philadelphia to specified places in western Pennsylvania west of a line extending from Bradford to Gettysburg. The petition set forth that the applicants were transporting property on the effective date of the act, attached copies of written agreements with the three customers named, and alleged that the applicants were not engaged in rendering other transportation for compensation between points in Pennsylvania.

The applicants produced evidence in support of all of the facts alleged in the petition, as well as certain other proofs showing compliance with regulations adopted by the commission, such as the carrying of insurance, etc. The commission found that the applicants formed a partnership by oral agreement on May 15, 1932, and continued in that manner until September 19, 1937, when a written agreement of ratification was made by which the individuals agreed to associate themselves as partners. To establish the fact that the partnership had been rendering service as a bona fide contract carrier by motor vehicle upon the effective date of the act over a route within the state, the applicants, in addition to verbal testimony describing their operations, produced about 1,400 original waybills covering a period

from October, 1935, to May, 1938. These bills showed constant service for the three named concerns. The existing contracts with the three firms were produced to the commission and the applicants' manager was submitted to an exhaustive cross-examination by attorneys representing competing carriers. Notwithstanding all of this testimony, the commission found that the applicants were not bona fide contract carriers. We will therefore turn our attention to the particular facts developed upon which the commission based its conclusion.

As the definition of a contract carrier by motor vehicle excludes from that class common carriers, it follows that if applicants were acting as common carriers without a permit from the commission they would not now be entitled to a permit under the "Grandfather" clause: *P. U. C. v. Gornish,* 134 Pa. Superior Ct. 565, 571, 4 A. 2d 569. It is not seriously contended by the commission or the intervening and competing carriers that the operations of the partnership were those of a common carrier for several years before and since the effective date of the act, but in that connection they do make some comment on one fact. For some time the applicants have been transporting by motor vehicle for the same three firms goods and materials in interstate commerce, and they made application to the Interstate Commerce Commission for a certificate to act as a common carrier in such interstate commerce. That permit, however, has never been granted. There was not any evidence even tending to show that in such interstate operations the applicants had actually acted or pretended to act as common carriers. Their status is therefore governed by what they have been doing and not by what they have asked permission to do in the future. In addition the testimony showed affirmatively that the interstate transportation was of the same character as their intrastate transportation. We find the record entirely bare of any evidence that would warrant a con-

clusion that the applicants were acting as common carriers either in interstate or intrastate transportation: *Klawansky v. P. S. C.,* 123 Pa. Superior Ct. 375, 187 A. 248.

As the broad conclusion of the commission is that the applicants were not "bona fide" operators of a contract carrier service, we will refer to the facts upon which that conclusion is predicated. J. R. Puhl is a widow and L. M. Falconer is a married woman. Each was the owner of a truck which she purchased a number of years ago and which has been registered in her individual name and not in the name of the partnership. Mrs. Falconer purchased her truck in 1929 and started in business at that time; Mrs. Puhl purchased her truck in 1932 and started in business then. The money used in the purchase of the trucks was inherited by each. They became partners in their operations on May 15, 1932, and the partnership entrusted the active management of the business to William Falconer, the husband of one partner and the nephew of the other partner. In addition, William Falconer operated two trucks of his own under a certificate from the Pennsylvania commission as a contract carrier. Some of the blank waybills used by the partnership were superscribed "J. R. Puhl Express" and some "L. M. Falconer Express." The manager testified that these blanks were used only because they had them on hand and did not wish to waste them, but that in each case the operations shown by such waybills were actual operations of the partnership. He corroborated that assertion by showing that the drivers named on the waybills were employees of the partnership. The partnership kept its own books and a partnership bank account, and the licenses for the trucks were shown to have been paid from the partnership account. The two women did not appear as witnesses at the hearing but were represented by counsel and by William Falconer as their witness.

If this were an application by one who had not been

engaged in business as a contract carrier before June 1, 1937, the evidence referred to might have some slight weight in support of a refusal of a permit, but in an application of this character it has no probative value, as we will endeavor to demonstrate. We will consider the reasoning of the commission and the basis for its conclusion in the order in which the facts are stressed by the commission.

It is a novel proposition that a married woman, since the emancipation of women in this state, ceases to be a bona fide owner and operator of a business venture if she employs her husband to manage that business for her. It is a matter of universal knowledge that some men would be skilled in the management of business and splendid executives except that they are poor financiers, and it is not an unusual experience to find wives better managers of finances than their husbands. It is not strange that, when a married woman inherits her own money from her family and embarks in business, she should keep her fingers on the purse strings even though she, at the same time, allows her husband to take charge of the details of a business which calls for the employment of drivers and roustabouts and the making of business contacts with other men. By such practice these partners did not cease to be bona fide operators. They are not to be deprived of their property for such unsubstantial reason. In an application under the "Grandfather" clause, neither the necessity for service nor the business ability of the applicants is a matter to be considered in the issuing of a permit. The legislature attached no such condition to its proviso and neither the commission nor we have a right to supply such a condition.

The next allegation is that the husband is operating two trucks of his own as a contract carrier and that such situation is inconsistent with the granting of a certificate. In *Phillips v. P. S. C.*, supra, we considered a comparable situation and there decided that the fact

that the husband and wife were each operating trucks on their own account was not a proper reason for refusing a certificate. An examination of the evidence shows that even if this were a proper matter for consideration there is no interference here, by reason of such relationship, that is detrimental to the public interest.

Neither is there any merit in the contention that because Mrs. Puhl and Mrs. Falconer did not appear and testify at the hearing their application should be refused. These women lived in Pittsburgh and the hearing was at Philadelphia, and it had been the practice of the commission, by their own admission, to issue permits under the "Grandfather" clause without hearing. Counsel offered to produce the two women for examination if the commission requested it. Under the circumstances, if the commission thought the public interest required their presence they should have continued the hearing and notified them to be present.

Finally, the commission refers to the fact that some of the waybills were made on blanks of L. M. Falconer Express and of J. R. Puhl Express. Each of the women was engaged in business prior to the formation of the partnership and had her printed blanks on hand, a few of which were used by the partnership. Even if we assume, as the commission does, contrary to all the evidence on the subject, that this use of some blanks showed independent operations by the women, it does not even tend to show that the partnership was not operating as a bona fide contract carrier in the remainder of its operations for three or more years before and since the effective date of the act, and that is the test. In addition, we call attention to the wording of the proviso in section 804 that if the applicant, "or a predecessor in interest," was rendering service as a bona fide contract carrier, the applicant is entitled to a permit as of right.

The commission attempts to justify its action in refusing this permit by assuming that because the appli-

cants must have been *bona fide* contract carriers on the effective date of the act, the use of the words *bona fide* warrants an inquiry into the necessity for the service and the fitness of the applicants just as would be the case if this were an application for a certificate of public convenience for a new service not formerly furnished. It was the intent and purpose of the proviso in section 804 to recognize and continue in force service bona fide performed by contract motor carriers on the effective date of the act as a matter of right, without the necessity of establishing that the applicant was fit and able properly to perform such service or showing that the proposed service was in the public interest. The condition that such contract carriers should be bona fide contract carriers meant that they must be genuine contract carriers without deceit or fraud. For example, if they had been in fact common carriers they would not have been entitled to the certificate. That was what was held in *McDonald v. Thompson,* 305 U. S. 263, 59 S. Ct. 176, a case relied upon by appellees. In *United States v. Maher,* 307 U. S. 148, 59 S. Ct. 768, the application was for common carriage and the service that had been rendered was sporadic. We find in the record no substantial evidence of rational probative force that will support the conclusion of the commission. Their action was contrary to the plain mandate of the statute. The order must be reversed as unreasonable, capricious, and illegal.

The order is reversed and the commission is directed to issue a permit to the applicants. Each party shall pay the expense of printing its own brief and the expense of printing the record shall be divided in equal proportions among the intervening appellees and the Pennsylvania Public Utility Commission.