## Reconsideration of Real Estate Broker's License

BARCO, Deputy Attorney General, July 29, 1943.—
You have requested our advice as to what authority
your department has to reconsider the applications of
an individual for licensure as a real estate broker under
the following state of facts:

Applications were filed for licensure as a real estate
broker by a secretary-treasurer of two building cor-
porations, under the provisions of section 6 of the
amendatory Real Estate Brokers License Act of July 2,
1937, P. L. 2811, 63 PS §432, within the required 90
days of the effective date of this act. Thereafter certain
additional information was furnished by him to your
department at the request of the Professional Licensing
Bureau. Finally, he was informed by letter of March
30, 1938, from your department that his applications
were rejected on the ground that he did not qualify for
licensure without examination on the basis of his ex-
perience, and that it would be necessary for him "to
serve a two-year apprenticeship as a licensed real estate
salesman in the employment of a licensed real estate
broker and submit to an examination as required by
law."

At the time that the applicant filed his applications
he had been actively engaged as a managing engineer of

real estate for a period of at least 12 years. His experience consisted of managing three large office buildings and two hotels.

The questions herein involved are as follows: (1) Did the applicant have a right to a license under section 6 at the time of the application? (2) Does the board presently have jurisdiction to reconsider the application? (3) Are notice and hearing necessary before refusal?

Some time ago we had occasion to advise your department, informally, on this matter, but it now develops that at that time we did not have the full facts before us. We were merely informed that it was an application for a real estate broker's license which your department was requested to consider on a nunc pro tunc basis because it originally had been filed within the time limit. We then informed you that the application could not be honored in view of our ruling in Informal Opinion No. 1101. A careful study of the file in this matter, which now contains all of the facts, reveals that this is a situation where the application was made in time, but the license, not having been granted, was again submitted for reconsideration by the board. Hence, Informal Opinion No. 1101 does not apply.

Your problem presents a fundamental issue in the expanding field of administrative law concerning the continuing power of an administrative agency to review, modify, or rescind its own decision on an application on which it has held no hearing.

The existence and extent of continuing jurisdiction in an administrative agency is primarily a problem in statutory construction. The Real Estate Brokers License Act was placed in force in Pennsylvania by the Act of May 1, 1929, P. L. 1216, 63 PS §431 et seq. The term "real estate broker" as defined in section 2 of this act was extended by the Act of July 2, 1937, P. L. 2811, 63 PS §432, to include "all managers of office buildings, apartment buildings, and other buildings, and persons employed by banking institutions and trust companies

for the foregoing purposes." Section 6 of the amendatory Act of July 2, 1937, P. L. 2811, 63 PS §432, note, provided as follows:

"Any person who has, for a period of two years immediately preceding the effective date of this act, engaged in any business or occupation not heretofore required to be licensed as a real estate broker, and who is under the provisions of these amendments required to be so licensed, shall be issued a real estate broker's license by the Department of Public Instruction, without requiring him or her to submit to an examination as required by the act to which this is an amendment and its amendments: *Provided, That such person makes application for such license within ninety days after the effective date of this act and pays the fee prescribed by law for such license.*" (Italics supplied.)

The amendatory Act of 1937 became effective on July 2, 1937. The Real Estate Brokers License Act, as amended, contains no restrictions upon the continuing power of control inherent in the present situation entrusted to the Department of Public Instruction. Section 10 of the act, 63 PS §440, specifies a procedure as to notice and "ample opportunity to be heard thereon in person or by counsel before refusing, suspending or revoking any license." Section 10 (c) of the same act provides:

"The refusal of the department to issue any license, after application properly made, and compliance by the applicant with the requirements of this act, shall be subject to review by the court of common pleas of Dauphin County, upon petition for writ of mandamus, or other appropriate remedy, with the right of appeal to the applicant as in other and similar cases."

There are numerous analogous statutes, in which the rapid expansion of governmental regulatory authority is qualified by "grandfather" clauses. In similar legislation in this Commonwealth, as well as in numerous Federal statutes, there is likewise imposed a time

limit within which an application must be filed in order to receive the protection of such grandfather clauses. Such clauses, exempting previously unregulated persons or businesses from the strict requirements of these new regulatory acts, if not required in most cases by constitutional safeguards, at least reflect a legislative recognition of fairness and justice. Thus in the case of one who has for years held a very responsible position managing buildings, it is quite impossible to comply with the newly-conceived regulatory requirement of an apprenticeship of several years in the office of a licensed real estate broker. The legislature, very properly, if not necessarily, tempered the imposition of governmental regulatory authority in this field in order to work no hardship upon such experienced persons by depriving them of their means of livelihood.

The Superior Court of Pennsylvania in Puhl et al. v. Pennsylvania Public Utility Commission, 139 Pa. Superior Ct. 152, 160 (1940), had before it section 804 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1304, extending the jurisdiction of an administrative agency so as to include previously unregulated contract carriers. A clause in section 804 exempted from the necessity of proving public convenience bona fide contract carriers by motor vehicle rendering service upon the effective date of that act, provided that application was made to the commission within 120 days after the effective date of that act. In an opinion by Parker, J., the Superior Court recognizes at page 160 that:

"It was the intent and purpose of the proviso in section 804 to recognize and continue in force service bona fide performed by contract motor carriers on the effective date of the act as a matter of right. . . ."

In its decision reversing an order wherein the commission had refused to recognize such "grandfather" rights, the Superior Court interpreted the exemption in favor of existing operators with liberality.

In the case of Whinney v. Public Service Commission, 116 Pa. Superior Ct. 472 (1935), the Superior Court upheld the action of the Public Service Commission in permitting continued service by a motor carrier which had taken no steps until 1923 to secure the benefit of the "grandfather" clause contained in the Public Service Company Law, effective January 1, 1914.

In the case of Bickley v. Pennsylvania Public Utility Commission, 135 Pa. Superior Ct. 490, 495 (1939), the commission and the Superior Court disposed of on its merits an application for registration as a common carrier filed as late as February of 1936 by a trucker who claimed to have served an extensive territory prior to January 1, 1914, the effective date of the "grandfather" clause of the Public Service Company Law.

In dealing with a "grandfather" application, therefore, an administrative agency is not confronted with a situation restricting its inherent power to modify, amend, or revoke any previous orders. It is the general rule that administrative determinations are subject to reconsideration and change where they have not passed beyond the control of the administrative authorities or where the powers and jurisdiction of the administrative authorities are continuing in nature. Since no rights vest by reason of the refusal of a "grandfather" application, even in public utility cases where other carriers would be seriously affected economically by the presence of a competing carrier, administrative authorities very clearly have power to reconsider their determinations in "grandfather" applications.

The legislative intent in this situation was not to exclude continuing jurisdiction in the administrative agency regulating real estate brokers. Under the enabling statute, it is possible for the Department of Public Instruction, through its Bureau of Professional Licensing, to act on inadequate information, as in fact happened in this case. In Gage v. Gunther et al., 68 Pac. 710, 713 (1902), Mr. Justice Harrison of the Supreme

Court of California recognized such continuing administrative jurisdiction and stated:

"There is no statutory inhibition against his granting a rehearing or a review, or the number of times a motion therefor may be made, or any provision relating to the time within which a rehearing may be granted, or within which the former decision may be set aside."

In the case of Pittsburgh & L. E. R. Co. et al. v. Public Utilities Commission of Ohio, 128 Ohio St. 388, 191 N. E. 467, 470 (1934), the Supreme Court of Ohio held that the "continuing jurisdiction" of an administrative agency overrode a requirement that an application for rehearing be filed within 30 days. In the field of the continuing jurisdiction of an administrative agency, as aptly stated by District Judge Underwood in the case of Froeber-Norfleet, Inc., v. Southern Ry. Co. et al., 9 Fed. Supp. 409, 411 (1934), it was held that "There is no common-law statute of limitations."

In Equitable Trust Co. of New York v. Hamilton, 226 N. Y. 241, 123 N. E. 380 (1919), Cardozo, J., found the continuing jurisdiction of an administrative agency was "consistent with" the scheme and purpose of the regulatory statute and found that this conclusion was "reinforced by compelling public policy and long continued practice". In the course of his opinion this eminent judge stated:

"In such circumstances, action once taken, it is said, is final, no matter how inconsiderate or hasty. We think that precedent and policy demand another ruling. . . . The board may disallow today, and on further consideration allow tomorrow. . . .

"The very question to be determined is when action becomes final. That is in every case a question dependent for its answer upon the scheme of the statute by which power is conferred."

As pointed out further in this decision, boards "must often act hastily and on inadequate information. They

ought to have some opportunity to undo and correct an error apparent to themselves".

The continuing jurisdiction of the Bureau of Professional Licensing of the Department of Public Instruction is, therefore, sustained by the almost unanimous decisions of courts and administrative agencies, and by the intention of the legislature in enacting the Real Estate Brokers License Act.

If it be assumed that applicant, by virtue of section 10 of the Act of May 1, 1929, P. L. 1216, as amended, 63 PS §440(b) and (c), was entitled to a hearing on his application, it would appear that by his letter of March 23, 1938, he was willing to consider the matter closed upon receipt of notification of the board's refusal to grant a license upon the basis of his submitted qualifications. Under subsection (c) applicant was then entitled to proceed by mandamus or other appropriate remedy to review the board's refusal to issue the license. This he failed to do. On this basis the board may now properly refuse to reconsider its action.

On the other hand the board may now in the exercise of its discretion, on the ground of newly-discovered evidence (42 Am. Jur. 537, 538), reconsider its determination. On this basis it should be made plain that a hearing is now being granted as a matter of grace and not of right. It should also be understood that in the event, following a hearing, the applicant should be refused a license, he may then exercise his right under subsection (c) to review the board's refusal before the Court of Common Pleas of Dauphin County. Hence, in determining whether to grant applicant a hearing, the board should consider whether, if all the averred facts as to his qualifications were true, the board would then grant him a license under section 6. If the board has no reason to doubt the applicant's qualifications as explained in his communications following his formal application, then it should hesitate to deprive him of the privilege of being licensed under the "grandfather"

clause simply because of his lack of diligence in appealing from a refusal by the board to issue a license, based on the absence of clear expression of his qualifications as contained in his original application which was made in time under section 6. In other words, if applicant, on the basis of the facts he now presents to the board, would then have been granted a license, the board now has discretion to grant him a hearing, or summarily to have him registered as a real estate broker.

We are of the opinion, therefore, and you are accordingly advised, that where an applicant for a real estate broker's license made timely application under the provisions of section 6 of the amendatory Real Estate Brokers License Act of July 2, 1937, P. L. 2811, 63 PS §432, and the application was refused, although the applicant was qualified, but no hearing was held on the application and no appeal was taken from the refusal of the application, the Board of Professional Licensing of the Department of Public Instruction now has authority, on the basis of the additional facts presented to it, if it would have granted a license at the time of the application, to register the applicant summarily as a real estate broker, or to grant the applicant a hearing on his license application.