# Coplay Cement Manufacturing Co. *v.* Public Service Commission et al.

*Public service companies—Rates—Change of rate pending prior complaint—Public Service Commission—Jurisdiction—Act of July 26, 1913, P. L. 1374.*

1. Under the Public Service Act of July 26, 1913, P. L. 1374, a public service company may manage its own affairs to the fullest extent consistent with the protection of the public's interest, and only as to the latter is the commission authorized to intervene, and then only for the special purposes mentioned in the act.

2. In determining whether the exercise of a right offends against the regulatory control necessary for such companies (in the interest of convenience, accommodation and safety of the public), the authority given the commission should be liberally construed.

3. Where the unrestricted exercise of existing powers tends to nullify the commission's control, a restrictive use is intended, its extent to be determined by the commission, with a right of appeal to the courts as provided by the act.

4. A change of rate does not control the commission in determining the reasonableness of rates.

5. A public service company may increase its rate while it has a prior increase complained against (before the effective date) undetermined by the commission.

6. The commission has no jurisdiction to order that the company shall continue the rates against which the pending complaint was filed.

Argued May 25, 1921. Appeal, No. 465, Jan. T., 1921, by Pennsylvania Power & Light Co., from judgment of Superior Court, Oct. T., 1921, No. 16, reversing order of Public Service Commission, dismissing petition for an order to compel continuance of rates, in case of Coplay

Cement Mfg. Co. v. Public Service Commission and Pennsylvania Power & Light Co. Before MOSCHZIS-KER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from Superior Court: 76 Pa. Superior Ct. 354.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the order of the commission. Pennsylvania Power and Light Co. appealed.

*Error assigned*, among others, was judgment, quoting it.

*George Wharton Pepper,* with him *Berne H. Evans, Ralph J. Baker* and *Thomas J. Perkins,* for appellant.— The Public Service Company Law is not, and was not intended to be, a complete code in which a company must look for specific authority for its every action: Suburban Water Co. v. Oakmont Borough, 268 Pa. 243.

Under the common law no restriction was imposed upon public service companies similar to appellant in respect to freedom in making and changing their rates and to the method to be followed in so doing: Brymer v. Water Co., 179 Pa. 231.

The court below erroneously construed the provisions of the Public Service Company Law which impose restrictions upon changes in rates and, in effect, read provisions into the law which are not contained therein.

The construction of the language of subdivision (f) of section 1 of article II of the Public Service Company Law contended for by complainant is strained and not consistent with well recognized principles of statutory construction: Scranton City v. Pub. Serv. Com., 73 Pa. Superior Ct. 192.

The Superior Court failed to give due weight, in construing the relevant provisions of the Public Service Company Law, to the long and uniformly accepted usage

and practice under that law: Scranton City v. Pub. Serv. Com., 73 Pa. Superior Ct. 192.

*David Wallerstein,* with him *Abraham Israel,* for appellee.—It is the purpose of the Public Service Law to extend and further protect the common law rights of the consumer; it is not its purpose to curtail or abridge them.

The act gives a public service company a remedy where it is alleged that changed conditions have made a rate under contest inadequate: Scranton City v. Pub. Serv. Com., 73 Pa. Superior Ct. 192.

It is the absolute obligation of the power company to show that the increases in schedule P-2, filed September 15, 1919, are just and reasonable. So far it has not met this burden. Yet it claims that it may, on its own motion, by the mere filing of a schedule, still further increase the rates. This is most unreasonable.

*Frank M. Hunter,* with him *John Fox Weiss,* for Public Service Commission.—Prior to the enactment of the Public Service Company Law, companies comprehended by that law had the power to initiate and change rates. That statute does not take away the power: Allegheny Heating Co.'s App., 1 Monaghan 91; Ohio Val. Gas Co.'s App., 1 Monaghan 97; Boyle v. R. R. Co., 54 Pa. 310.

The Public Service Company Law recognizes the existence of such a power: Suburban Water Co. v. Oakmont Boro., 268 Pa. 243.

OPINION BY MR. JUSTICE KEPHART, July 1, 1921:

This is an appeal from a decree of the Superior Court reversing an order of the Public Service Commission and holding that a public service company could not increase its rates while it had a prior increase complained against (before the effective date) undetermined by the commission. The Superior Court fell into error in not considering the general scope and scheme of the Public

Service Act, and its applicability to utilities in the performance of their various obligations. It was not intended by the legislature that the commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the commission's jurisdiction. There are many powers and obligations inherent in a public service company. They exist through statute or common law, or are indispensably necessary to the fulfillment of charter obligations. When the Public Service Act was passed it reached into these rights, powers, privileges and obligations and took over the part relating to public welfare, and embodied them in an act, as being subject to regulation. Such steps created no new powers in the utility except such as affected the commission—its dealings—with the company, if these may be called powers. They are, in effect, certain limitations on the existing powers in the form of requisites necessary to be done or secured before these powers may be exercised by the public service company. All the powers mentioned in article III appertained to the corporate entity before the act and the same may be said of the obligations and duties contained in article II. But neither created an additional franchise or right, nor, what is more important, did they impress on the existing rights, powers and privileges not mentioned in the act a limitation, restriction or elimination. To sweep away such rights or hamper their exercise because not mentioned in the act would be to deprive the company of the capacity to function, and the public is vitally interested in its continuation. To sustain this conclusion, aside from constitutional questions, the least that can be said is, the Public Service Act should contain positive and explicit language. But the

act did not so speak, for we find them specifically safeguarded. Section 12 of article III is a distinct, positive recognition: "Every public service company shall be entitled to the full enjoyment and exercise of all and every the rights, powers, and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise expressly provided." This certainly did not mean abrogation or restriction of these rights. The concern was supposed to move along, performing its ordinary duties as theretofore, subject to the regulation imposed by the act. The rights, powers and privileges not mentioned constitute by far the greater part of corporate life, internal management, control and discretionary power over its property, the proper application, enforcement and enjoyment of the same matters submitted to the commission's control being among them. *In short, the company manages its own affairs to the fullest extent consistent with the protection of the public's interest, and only as to such matters is the commission authorized to intervene, and then only for the special purposes mentioned in the act.*

In considering the reservation in article III, section 12, it is necessary to know, from a full reading of the act, whether the exercise of an existing right or privilege not mentioned therein (here the right to change the rate while another rate is undetermined) should be restricted to secure a fulfillment of its purpose. Is its exercise hostile to the accommodation, convenience or safety of the public? The theory underlying the act must be taken into account. Public service business occupies a peculiar position in the community,—interwoven as it is with communal life,—of a nature monopolistic in character, compelling the public to be its customer whether it will or not, operating under laws with governmental powers not given to ordinary companies. See New Street Bridge Co. v. Public Service Commission, 271 Pa. 19. In determining whether the exercise of a right like that now discussed offends against the regulatory control necessary

for such concerns (in the interest of convenience, accommodation and safety of the public), the authority given the commission should be liberally construed, and that incidentally necessary to a full exposition of the legislative intent be upheld as being germane to the law. Where, therefore, the unrestricted exercise of existing powers tends to nullify the commission's control, a restrictive use is intended, its extent to be determined by the commission, with a right of appeal to the courts as provided by the act.

The statute imposed on the utilities certain obligations and limitations of powers; certain steps must be taken and certain acts performed before they can do or refrain from doing certain things. This was a part of the scheme to perfect the control necessary to safeguard the public in securing convenience, accommodation and safety. But how can a change of rate injure such control, or in what aspect is the public injured by a change of rate? Safety, accommodation and convenience, as those terms are understood in public utility regulation, do not primarily depend on rates, though indirectly they may be affected thereby. Nor does a change of rate control the commission in determining the reasonableness of rates. The company, not the commission, initiates rates, fares and charges for the kind and character of service furnished or the kind and character of facilities, and the price to be paid therefor. This is done under the same power that it originally possessed before the act, and, moreover, the authority is expressly recognized in the act. Article III, section 1, reads, "It shall be lawful for every public service company to demand, collect and receive fair, just and reasonable prices, rates, fares, tolls, charges, or other compensation for each and every service rendered or to be rendered by it to any person or corporation"; this is what has been done. There is no limitation on the number of times a company "may demand, collect and receive fair, just and reasonable rates." When a given rate, because of business conditions, be-

comes unfair, unjust and unreasonable, the company has the power to demand fair, just and reasonable rates. It initiates rates when the necessity here defined compels it; the wavering scale of reasonableness is the standard, and of it utility is the sole judge in the first instance, subject of course to what may later follow when the commission's machinery is started. This authority certainly is not hostile to the Public Service Act but makes the act a more workable one, secures to the public the service demanded, the public being fully protected by complaint and reparation.

But the right to initiate is subject to a limitation imposed on the utility; it becomes effective as provided by section 1 (f), article II. "A rate becomes, on the effective date, an effective rate, and, as such, it is a collectible rate, or one that may be sued for. There can be no legal rate except the last tariff rate published as provided by law, and the effective rate thus published supersedes all prior rates covering the service therein called for": Suburban Water Co. v. Oakmont Boro., 268 Pa. 243, 249. Generally speaking, the only limitation imposed by the act on the initiation or change of rates is that mentioned in article II, section 1 (f). There are three exceptions not material but which we shall name: (1) a change within three years of a rate determined by the commission after a hearing (mentioned in article II, section 1 (f) ) ; (2) a rate subject to automatic adjustment in relation to dividends and profits, and (3) a sliding scale.

The new schedule was filed a year after the one to which the undetermined complaint had been filed by a consumer. It increased the cost of service. This new schedule superseded the prior one, and was the only collectible rate. This conclusion does not give rise to multiplication of issues, in that a new complaint must be filed to the new rate, nor a duplication of effort, nor an increase in costs, nor an anomaly of proceeding. It must be remembered the real issue before the commission is a complaint as to rates, and though a change in the rate

has been filed, the commission may,—and it has the power under the act,—consolidate these several schedules of rate increase, and cause the complaint, the record and the evidence to be taken as a complaint, record and evidence in connection with the new rate. Ample authority exists in the act to prevent any injustice or unnecessary expenditure of money on the part of a consumer. Furthermore, the commission has the power to take speedy action to safeguard the public by quickly striking down the sharp practices suggested by appellee, which it says may occur where successive increases are made.

Governmental control over these essential elements of corporate existence must be carefully exercised. The commission and the utility are not dealing with a purely legal proposition, subject to inflexible rules of law, but with an ever changing economic condition, with powers adapted to fit recurring changes in economic life. To attempt to confine it or the utility to the sometime unwieldy procedure adopted by the courts would be subversive of all the good intended by the act. The business disposed of by this body, with the speedy and expeditious manner in which it is conducted, is enormous. Certain matters before it must assume a legal aspect, as appears from the act. But subjects like that now before us (frequency of change of rate of utility) are not to be adjudged by technical legal procedure. They are regulated by economic laws which, so far, courts or legislatures have not been able to control. What may be an adequate rate to-day, next month may be quite unreasonable, and this through circumstances beyond the control of the commission, utility or courts. Therefore the right to initiate and change is fundamental to the company, as the act imposes the severest kind of penalties for charging a rate that is not a published rate; the legislature, with evident intent, did not disturb this heretofore existing right. But, on the other hand, when the rate is changed, the act expressly recog-

nizes the right of placing it completely in the commission's control and power to safeguard the public in every way. When an action of assumpsit is instituted, the stage is set; the future takes care of itself. With these concerns the stage setting is constantly changing; no one, at present, will be vain enough to guess, in times such as now exist, what the next setting may be.

No little argument has been devoted to the question that this should be reviewed in the same light as a proceeding in equity to restrain the collection of an unreasonable rate. In addition to what we have already said, we are referred to no act of assembly or action of the court (except as to artificial gas and water companies) which authorizes the court to interfere in the matter of rates. In fact it was very early held that "there is no restriction upon the rates they may charge for roadway use and transportation by themselves": Boyle v. Phila. and Reading Railroad Co., 54 Pa. 310. We are not merely deciding an equitable proceeding governed by the rules heretofore applied, where the courts have been asked to restrain the collection of unreasonable rates. What we are endeavoring to do is to uphold the commission in its effort to sustain the Public Service Act as a workable one for the best interest of the public as well as the utility.

The order of the commission was an entirely proper one. It had no jurisdiction to restrain or prevent a corporation from exercising its right to change its rate when it appeared necessary to them.

The decree of the Superior Court is reversed and the order of the commission is reinstated; appellee to pay the costs.