Hostetter, Appellant, v. Public Service Commission.

Argued April 13, 1933.

Before TREXLER, P. J., KELLER, CUNNING-HAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Harold S. Shertz,* for appellant.—A public service company has the right to enjoy and exercise the rights which it possessed January 1, 1914: City Transfer

Co. v. Public Service Commission, 93 Pa. Superior Ct. 210; Bangor Water Company v. The Public Service Commission, 82 Pa. Superior Ct. 48.

*Samuel Graff Miller*, Legal Assistant, and with him *E. Everett Mather, Jr.*, Assistant Counsel, and *John Fox Weiss*, Counsel, for appellee.—The effective administration and proper regulation of the business of common carriers by motor vehicles requires the limitation of registrants under Article III, Section 12, of the Public Service Company Law: Stockton v. The Public Utilities Commission, 166 N. E. 135.

*W. S. T. Hurlock, Jr.*, of *Nauman, Smith & Hurlock*, for The Pennsylvania Railroad Company, Motor Freight Express and Railway Express Agency, and with him *John T. Brady* for Reading Company and Reading Transportation Company; *E. M. Vale* for Central Storage and Transfer Company; *Gilbert Nurick* and *Sterling G. McNees* for Alko Express Lines and Certificated Motor Carriers; *H. Clay Burkholder* and *Windolph and Mueller*, for Conestoga Transportation Company and Conestoga Traction Company; and *Robert C. Fluhrer*, for York Motor Express Company and York Transfer Company, for intervening appellees.

OPINION BY PARKER, J., October 2, 1933:

T. N. Hostetter, doing business as Keystone Express and Storage Company, presented a petition to the Public Service Commission of this Commonwealth alleging that prior to January 1, 1914, he had been engaged as a common carrier in the transportation of freight, merchandise, household goods, and other personal property over the highways; that on and prior to that date, he was performing such service in and about the city and county of Lancaster and generally

between Lancaster and various points and places within the territory bounded by "Harrisburg, Hummelstown, Hershey, Lebanon, Reading, Birdsboro, Norristown, Coatesville, Oxford, Wakefield, York, Middletown and Harrisburg," and with respect to household goods and furniture, to various points and places throughout the state of Pennsylvania, as well as to interstate points, and was continuing so to do; that on the effective date of the Public Service Company Act, he was using three motor trucks and a number of horse-drawn vehicles; that later the horse-drawn vehicles were replaced by motor trucks; and praying the commission to register him "as having been in business at the time of the passage of the Public Service Company Law, in accordance with Article III, Section 12, thereof, preserving to him the full enjoyment of all powers and privileges which he lawfully possessed or might possess." Protests were filed by various public service companies authorized to do business in the territory affected. After hearing, the commission made an order registering the appellant but reducing the territory and the number of vehicles which he might use in such service. Thereupon the applicant for registration appealed to this court, alleging as error the limitations imposed by the commission as to territory and number of vehicles.

It is provided by the Public Service Company Law, Act of July 26, 1913, P. L. 1374, Art. III, §12 (66 PS 311), effective January 1, 1914, as follows: "Every public service company shall be entitled to the full enjoyment and exercise of all and every the rights, powers, and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise expressly provided." Under the undisputed evidence and the findings of the commission, the applicant was functioning as a common carrier at the effective date of the act and

has continued to exercise the rights claimed. "To the extent that it [he] exercised that power as a common carrier at the date of the Public Service Company Act it [he] may continue to do so without permission from the commission; but any enlargement of that exercise, bringing it [him] into competition with other public service companies under the jurisdiction of the commission, can only be begun after appellant has applied to the commission and secured its certificate of public convenience in accordance with the provisions of the act": City Transfer Co. v. P. S. C., 93 Pa. Superior Ct. 210, 216. The commission was within its powers in insisting in this case, as it has in other cases coming to its knowledge, that the applicant, as a public service company, shall be registered with the commission to the end that he be required to submit proper tariffs or comply with other reasonable regulations, even though he was in business before the effective date of the act. "The statute imposed on the utilities certain obligations and limitations of powers; certain steps must be taken and certain acts performed before they can do or refrain from doing certain things. This was a part of the scheme to perfect the control necessary to safeguard the public in securing convenience, accommodation and safety": Coplay Cement Mfg. Co. v. P. S. C., 271 Pa. 58, 63, 114 A. 649. In any event, the applicant here has submitted himself to the jurisdiction of the commission and has asked to have determined the matters in controversy.

The portion of the final order of the commission of which the appellant complains was as follows: "A certificate of registration will be issued to the applicant certifying to his right to operate three motor vehicles for the transportation of property upon call or demand in the City of Lancaster and the townships contiguous to that city, upon receipt from him of a list of three trucks, each of a capacity similar to that

used by him on January 1, 1914," etc. The commission was correct in limiting the certificate to a "call or demand" service. While the applicant has, since the effective date of the act, been operating in part over a fixed route and schedule, he did not possess that right prior to 1914 and has not been granted any such privilege. There is not any testimony showing that prior to 1914 applicant ever furnished any other service or undertook to act in any other manner than on "call or demand."

The appellant first objects to that provision of the order which limits the territory to be served by him to the City of Lancaster and townships *contiguous* to that city. On the oral argument of this case, it was stated by counsel for the commission that, in making the order, the word "contiguous" was intended to be understood in the sense of adjacent, and it was not intended to confine the operations of Hostetter to such townships as actually touched the municipal limits of the City of Lancaster. This would, however, leave undetermined one of the very matters which the parties have endeavored to have fixed by this proceeding for it would be impossible for the applicant to know precisely what townships are adjacent to the city. There is not any evidence indicating by name the townships which were served by the applicant prior to 1914. The undisputed evidence of the applicant and the fair import of the evidence of G. A. Miller, the only witness called by protestants, as to the field of operations of Hostetter, was to the effect that he was serving the city and county of Lancaster. There is no warrant for a limitation on the service outside the city to townships contiguous to the city. We are all of the opinion that the only reasonable conclusion to be drawn from the testimony is that Hostetter was engaged in a call or demand service within the limits at least of Lancaster County on January 1, 1914, and the order should be modified accordingly. As to territory

beyond the limits of the county, the findings of fact of the commission are not sufficiently definite to enable us to perform our duty, which is to determine whether such findings of fact are supported by the evidence and whether the appellant has been deprived of any lawful right. The matter to be ultimately determined is what powers and privileges the applicant enjoyed *as a common carrier* on January 1, 1914, and has not surrendered. We feel that undue weight was given by the commission to the fact that the appellant did not produce records showing the exact amount and character of service rendered by him prior to 1914. It would not be strange for one engaged in a draying and transport business to have destroyed by 1932 records covering a period prior to 1914.

The applicant also complains that the certificate was limited to the right to operate three motor vehicles of a capacity similar to that used by him on January 1, 1914. Here, again, the testimony is undisputed and supported in part by the evidence of the protestants that prior to 1914 Hostetter was operating not only three motor trucks, but also six two-horse wagons and seven one-horse wagons with twenty-two horses, and was occasionally leasing motor trucks from other persons. These horse-drawn vehicles and leased trucks have been supplied by a considerable number of motor vehicles which he is now operating. He received no credit whatever for the service performed by means of horses and wagons. It must have been a considerable business that would require the use of thirteen wagons and twenty-two horses. The mere fact that owing to changed conditions the motive power was changed from horse to gas engine would not be sufficient to warrant depriving applicant of rights he was exercising when the law became effective. In this respect, the commission was also in error.

In determining what rights the applicant now pos-

sesses and what duties he must perform, it is proper to take into account the whole Public Service Company Law and the field of operations and character of the particular utility. In Coplay Cement Mfg. Co. v. P. S. C., supra, the Supreme Court said (p. 62): "In considering the reservation in Article III, Section 12, it is necessary to know, from a full reading of the act, whether the exercise of an existing right or privilege not mentioned therein (here the right to change the rate while another rate is undetermined) should be restricted to secure a fulfillment of its purpose. Is its exercise hostile to the accommodation, convenience or safety of the public? The theory underlying the act must be taken into account. Public service business occupies a peculiar position in the community,—interwoven as it is with communal life,—of a nature monopolistic in character, compelling the public to be its customer whether it will or not, operating under laws with governmental powers not given to ordinary companies. See New Street Bridge Co. v. Public Service Commission, 271 Pa. 19. In determining whether the exercise of a right like that now discussed offends against the regulatory control necessary for such concerns (in the interest of convenience, accommodation and safety of the public), the authority given the commission should be liberally construed, and that incidentally necessary to a full exposition of the legislative intent be upheld as being germane to the law. Where, therefore, the unrestricted exercise of existing powers tends to nullify the commission's control, a restrictive use is intended, its extent to be determined by the commission, with a right of appeal to the courts as provided by the act." Conditions are encountered in the regulation of the transportation of persons and merchandise by motor vehicles on the public highway which are not common to the operation of other utilities. This makes necessary the adoption of different

restrictions and limitations for the former as to vehicles to be used and territory or places to be served. Utilities such as railroads, pipe lines, and natural gas companies are subject to special statutory provisions and owe certain duties in exchange for the right of eminent domain or otherwise that call for different treatment. It is proper in the interest of the convenience, accommodation and safety of the public in the case of transportation on the public highway to impose limitations as to the number and character of vehicles to be used. Public service companies are, however, entitled to the full enjoyment and exercise of the rights, powers, and privileges which they possessed at the time of the passage of the Public Service Company Law. It could scarcely be contended that the convenience, accommodation or safety of the public would be injuriously affected by a mere change from horse-drawn to motor vehicles of the same capacity. A public service company, as any other company, has the right to manage its own affairs to the fullest extent consistent with the public interest and insofar as they do not act contrary to law. (Coplay Cement Mfg. Co. v. P. S. C., supra.)

This applicant, under the evidence produced, is entitled to use a sufficient number of motor vehicles to perform the service which he is entitled to render as a result of what he possessed prior to 1914. To take from him the portion of the service represented by the work done by the horse-drawn vehicles and leased vehicles was depriving him of his lawful rights. The order should, therefore, be modified so as to allow him an equivalent for the capacity of the horse-drawn vehicles and leased trucks.

It is necessary that the commission should make definite findings of fact as to the territory supplied by the call or demand service of the applicant and the number and capacity of vehicles employed prior to

January 1, 1914, and to that end the record must be returned to the commission for the purpose of making such findings or for such other proceedings as the commission may deem proper not inconsistent with this opinion.

. The order of the Public Service Commission is reversed and the record is remitted for further proceedings not inconsistent with this opinion.