Opinion by
 

 Baldrige, J.,
 

 This appeal is from the refusal of the Pennsylvania Public Utility Commission to approve the sale by the Abington Electric Company to the Northern Pennsyl
 
 *202
 
 vania Power Company of certain distribution lines and facilities located in Lenox Township, Susquehanna County. These companies will be referred to hereafter as the Abington Company and the Northern Company, respectively.
 

 The Abington Company supplies light, heat, and power, by electricity, in that part of Lackawanna County which adjoins Lenox Township in Susquehanna County. It has no: express charter rights in Lenox Township, but renders service in that portion thereof which is adjacent to its chartered territory.
 

 The Northern Company, under its express charter rights, furnishes the same service in portions of Susquehanna County, including the township of Lenox where it has distribution lines. It purchases from the Abington Company some of its energy, which is supplied at a point where the lines of the two companies join in Lenox Township.
 

 The Abington Company agreed to sell, and the Northern Company consented to buy, all the distribution lines of the former company in Lenox Township for $5,700; the Northern Company to serve all the Abington customers in that township.
 

 The Public Utility Commission refused to approve the sale, on the ground that the rates of one-half the consumers served by the distribution lines proposed to be transferred would be increased. It ordered further: “That Abington Company forthwith take appropriate action to obtain lawful authority to supply electric service in that part of Lenox Township, Susquehanna County, in which said Abington Electric Company now supplies such service without such, authority.”
 

 The appellants’ first position is that Section 202(e), Art. II, of the Public Utility Law of May 28, 1937, P. L. 1053 (66 PS §1122), is void, as being an unconstitutional delegation of legislative power. It is unnecessary to discuss that question as this court is of the
 
 *203
 
 unanimous opinion
 
 that the
 
 commission’s action in refusing a certificate of public convenience evidencing its approval of the sale of the Abington Company’s property was arbitrary and unreasonable.
 

 The two pertinent provisions of the Public Utility Law are Sections 202 and 203, which we will assume are valid legislation. The former provides that if a certificate of public convenience first be had and obtained, it shall be lawful:
 

 “(e) For any public utility......to acquire from, or transfer to, any person, or corporation, including a municipal corporation, by any method or device whatsoever (including among other things a consolidation, merger, sale or lease) the title to, or the possession or use of, any tangible or intangible property whatsoever: Provided, however, That the commission may, by regulation, exempt any class of construction, installation or improvement, or any class of property from the provisions of this paragraph.”
 

 Section 203(a [66 PS §1123]) reads as follows:
 

 “......A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public, and the commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.......”
 

 The commission pointed out in its report and order that of the 28 customers being served from the distribution lines in question, the rates of 14 would be increased in the total sum of $5.66 per month, by the substitution of the tariffs of the Northern Company for those of the Abington Company, if the sale were approved, and that the rates of the remaining 14 would be decreased in a total amount of $23.76, making a total net decrease, accruing from the sale of the lines, in the
 
 *204
 
 amount of $18.10 per month. Only one customer’s rate would be increased more than $1 per month; the monthly increase for the other 13 would be less than $.60. The decreases to the consumers are estimated from $.08 to $8.31 per month. The monthly decrease of 7 of the consumers would be more than $1.
 

 In passing upon the question, whether this sale should be approved as necessary or proper for the accommodation and convenience of the public, due regard should be given to the convenience of not merely some, but of all of the consumers. The reason given by the commission for refusing this application is “that the few larger consumers would receive the entire benefit of the net decrease in rates.” This statement is not supported by the facts, as one-half the total number of consumers served in this township would receive a fairly substantial reduction, considering the amount each pays, amounting to more than four times the increase in rates the other one-half would be required to pay. From the commission’s report, we can but conclude that it failed to give due weight to the material benefits the one-half would derive from the sale. The proposed reduction in rates to a substantial number of customers would certainly be a convenience to them.
 

 The legislature, as we have seen, has provided that it is entirely proper for any utility, upon the commission’s approval, to sell to another corporation any of its property. The commission should grant that right, if such action is necessary or proper for the service, accommodation, convenience, or safety of the public. It does not appear, nor does the commission hold, that this arrangement was not for the best interests of the companies involved. Its report indicates quite the contrary, as it states: “It would be unnecessary for Northern Pennsylvania Power Company to construct additional facilities for service to said consumers.”
 

 
 *205
 
 There was no question raised by the commission to the proposed sale on the basis of an improper price, or that the service to the customers would be impaired, or any other substantial or valid reason militating against the consummation of the sale. It was not within the contemplation of the legislature to restrict utility activities, so that a company may not conduct and control its affairs to its best interests, but that it may fully enjoy and exercise all the rights, powers, and privileges which it lawfully possesses, keeping in mind always the public welfare so that there is a proper service, accommodation, convenience, or safety. It is only as to matters in which the public may be interested, and then only for such special purposes as are mentioned in the act, that the commission has jurisdiction. “A Public Service Company, as any other company, has a right to manage its own affairs to the fullest extent consistent with public interest, and in so far as they do not act contrary to law”:
 
 Hostetter v. P. S. C.,
 
 110 Pa. Superior Ct. 212, 220, 168 A. 493. In determining the service, accommodation, convenience, or safety to the public, the commission may not disregard the evidence and consider the questions from a managerial viewpoint, as that power has not been delegated to it by legislature, and, when it attempts to do so, it is acting illegally. It must stay within its limits of jurisdiction. In
 
 Coplay Cement Mfg. Co. v. P. S. C.,
 
 271 Pa. 58, 61, 114 A. 649, the court said: “It was not intended by the legislature that the commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the commission’s jurisdiction.”
 

 
 *206
 
 The commission’s action in refusing to grant the certificate applied for, which would result to the companies’ advantage and be a benefit to one-half the consumers which would exceed the disadvantage to the other one-half, cannot be regarded as a proper exercise of its power.
 

 Furthermore, the commission, in directing the Abington Company to obtain lawful authority to supply electric service in the portion of Lenox Township now being served, in our opinion, exceeded its authority. The authority of that company to serve consumers in that district was not at issue in this proceeding. The application had for its sole purpose the approval of the sale of the Abington Company’s property. Whether that company, under its charter powers or the adjacent clause in the Act of May 8, 1889, P. L. 136, may give service in Lenox Township, where the Northern Company has express charter rights for the entire township, cannot be determined from this record. Certainly, its rights and powers were not for determination. No fair and open hearing was had, as is contemplated by the law. Apparently, that matter was not even discussed. “The right to such a hearing is one of The rudiments of fair play’ ”:
 
 Ohio Bell Telephone Co. v. P. U. C.,
 
 301 U. S. 292, 81 L. ed. 1093. Before the commission could enter an enforceable order compelling the Abington Company to obtain authority to give service in Lenox Township, complete and specific pertinent findings should have been made, so that the court, if a review should be necessary, could have an understanding of the commission’s action. This court said in
 
 Erie Lighting Co. et al. v. P. U. C.
 
 131 Pa. Superior Ct. 190, 198 A. 901: “Among the restraints affecting those performing administrative and quasi-judicial functions are the requirements that the agency so acting shall afford the interested parties a fair and open hearing, that it make findings of fact so that its action may
 
 *207
 
 be reviewed, if necessary, by the courts, and it assign a reason for its action.”
 

 This record in its present condition does not require us to decide whether the Abington Company has corporate authority to serve customers in Lenox Township. We may add, however, that if the Abington Company has no such authority, the commission’s order is not warranted, as it cannot require a utility to serve in a territory not within the scope of its charter and applicable statutes:
 
 Johnstown Water Co. v. P. S. C.,
 
 107 Pa. Superior Ct. 540, 542, 164 A. 101;
 
 State v. P. S. C. (Mo.),
 
 229 S. W. 782.
 

 The order of the commission is reversed; the application for certificate of public convenience is directed to be approved; costs of this appeal to be paid by the Public Utility Commission.