## Northern Pennsylvania Power Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued December 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Walter B. Saul,* of *Saul, Ewing, Remick & Saul,* with him *Harold J. Ryan,* for appellants.

*John C. Kelley,* with him *Edward Knuff,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 26, 1939:

The Pennsylvania Public Utility Commission refused to allow the Northern Pennsylvania Power Company to sell its franchise and all the property owned by it to Metropolitan Edison Company and thereby to bring about a merger of the former with the latter. The Superior Court approved the action of the Commission (132 Pa. Superior Ct. 178) and from its order we allowed the two companies to appeal.

Four questions are posed to us by appellants, only two of which require extensive treatment at our hands.

(1) It is alleged that section 202(e) of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS Sec. 1122, under which the Commission claimed jurisdiction over mergers, is void as an unconstitutional delegation of legislative power and a deprivation of private property

without due process of law. As to the first reason assigned for its unconstitutionality, we regard the question as moot because of the passage of the Act of September 28, 1938, P. L. 44, 66 PS sec. 1122. So far as the second ground is concerned, in view of our determination on the two other questions, it need not be considered.

(2) It is asserted that the Federal Power Commission has exclusive jurisdiction, under the Federal Power Act of August 26, 1935, 16 USCA 791 et seq., of the sale and consequent merger here contemplated, both companies being engaged in interstate commerce. We think this subject was properly passed upon by the Superior Court in holding that the Federal Power Commission does not have exclusive jurisdiction.

(3) Orders and findings of the Public Utility Commission, denying approval of the proposed sale, are erroneous as a matter of law, because not supported by, and contrary to, the uncontradicted evidence in the case.

(4) The merger of two public utility corporations, under the general law of the Commonwealth, is not subject to veto by the Public Utility Commission, in the absence of any evidence that the service, accommodation, convenience or safety of the public will be adversely affected.

The two latter propositions are variants of the same idea and will be considered together. In so doing, it may be well to start with certain fundamental principles. The free alienation of property is an inherent right of the owner under our customs, law and constitutions, subject only to restraint if against the public interest. Therefore, the Northern Company has the right to sell its property, unless it is established, by competent evidence, that the sale will adversely affect the public in some substantial way. As we view the record before us, no such evidence was produced. The Public Utility Commission is not a super board of directors for the public utility companies of the State and it has no right

of management of them. Its sole power is to see that in the matter of rates, service and facilities, their treatment of the public is fair. Speaking through the present Chief Justice, we said: "It is not intended by the legislature that the commission should be a board of managers to conduct and control the affairs of public service companies, but it was meant that where certain of their powers and obligations had intimate relation to the public through fairness, accommodation or convenience, the commission should have an inquisitorial and corrective authority to regulate and control the utility in the field specifically brought within the commission's jurisdiction. . . . the company manages its own affairs to the fullest extent consistent with the protection of the public's interest, and only as to such matters is the commission authorized to intervene, and then only for the special purposes mentioned in the act": *Coplay Cement Mfg. Co. v. Pub. Ser. Com.*, 271 Pa. 58, 61, 114 A. 649. "It must never be forgotten that while the State may regulate with a view to enforcing reasonable rates and charges, it is not the owner of the property of public utility companies and is not clothed with the general power of management incident to ownership": *Southwestern Bell Tel. Co. v. Pub. Ser. Com.*, 262 U. S. 276, 289.

We have this situation, two public utility corporations in the course of the management of their own affairs, elect to merge. Their entire common capital stocks giving control of the two corporations are owned by the NY PA NJ Utilities Company and they are under its management. The merger concerns the financial affairs of the corporations with which the directors have the sole right to deal, unless and only unless the action is contrary to the public interest. The merger is in the exercise of a power vested in corporations by the general assembly. The commission admits, as it is bound to admit under the evidence, that the merger would be to the advantage of the two corporations, would reduce expenses

and immediately enure to the benefit of their stockholder. The commission apparently seems to think that stockholders are no concern of its, but they are of concern, because, if their company is financially strengthened, its public service can be better rendered. It would seem that the merger is denied largely on the ground that it will not result in the *immediate* reduction of rates and, therefore, is not in the public interest. This is not a proper ground for the commission's refusal. If it were, no long term plan looking to ultimate reduction of rates could be set in motion. The approach of the commission to the approval or disapproval of the merger is erroneous in principle, because the question of merger is one of internal management, unless evidence heard by the commission discloses that the merger would adversely affect the public. The only question before the commission is whether it does so adversely affect, and where the testimony establishes, as it does here, that the merger would not adversely affect the public interest, the power of the commission over the merger vanishes. Our conclusion, from a careful reading of the record and the opinions of the commission, is that it refused the merger on the merely arbitrary ground that it preferred to have the companies not merge. Its attitude conveys the impression that it was really acting in the capacity of a board of directors. In the brief submitted in its behalf, its position is summed up thus: "The fatal and insurmountable objection to this application is the fact that the territories served by the applicant companies are not contiguous and are not physically connected." This is a question of management and not a question of regulation. There is no doubt that the two companies can be physically connected when in the opinion of those charged with the responsibilities of management and finances deem it wise to do so.

While the territories of the two companies are not presently physically interconnected and are thirty-two miles apart, they are susceptible of interconnection by

the expenditure of approximately $750,000. A portion of the interconnection has already been constructed and a large part of the necessary right of way for the remainder has been secured. In connection with its finding that the merger of the two companies would bring into one corporation units widely separated, it was stated by the commission, that adequate regulation by it would be rendered difficult, if not virtually impossible. No testimony was produced to show this, and it is apparent, from the evidence produced by the companies, that no real difficulty in these respects exists.

Everyone knows that the merger of electric companies has redounded to the public interest, and has enabled them to meet the public requirements growing out of the manifold uses of electricity in this electric age, in a way which smaller units could not have done. Just why the unification of these two companies now under the same management and control would not be to the public interest is nowhere shown by the testimony or logically demonstrated by the reasoning of the commission. It is said by the commission that there is a disparity in the territory served by the two companies, that the territories do not adjoin and that one is more thickly populated than the other and as a result they should not now be served upon a single rate system. Whether they shall or shall not be after the merger is for the determination of the commission, which has the power to see that just and reasonable rates are fixed. The commission admits, and its brief so states, that there will be savings resultant from the merger, but it is said, they would not be sufficiently substantial to have any effect on the rates. There is no intention to increase the rates and the rate payers in this respect will be in the same position that they now are. Whether the two companies merge into one or function separately, the policies pursued in the matter of rates and service and accounting would still be subject to the regulation of the commission. If it should be properly and justly determined that separate

rates in the territories now served by the two companies should be established, separate rates could be.

Supporting the wisdom of the merger, it was shown by uncontradicted evidence that, after the consolidation, the Metropolitan Company, because of its greater financial strength, will be able to refund the Northern Company's existing funded debt at a saving of more than $800,000 over the remaining life of the outstanding Northern Company's bonds, that after the merger, the Metropolitan Company will be able to finance future additions and betterments to what is now the Northern Company's property at less cost than the Northern Company alone could, and that the expenditures to be made by the Northern Company for future additions, betterments and improvements to its property will be large, that numerous economies and savings, based upon the elimination of duplications in accounting records, reports, tax returns, auditing expenses and in other respects, will result from the merger, and, generally, that the merger will strengthen the ability of the Northern Company to fulfill its obligations to the public and to its customers, by placing its territory and business in the hands of a much stronger company, and ultimately will result in savings in operating expenses and in the simplification of rate structures, with the likelihood of lower rates. It is significant that no one appeared before the commission to protest the merger, and that the commission itself produced no evidence to countervail that submitted in its favor. There is no sound reason for keeping the two companies apart.

We are of opinion that the sale and consequent merger will not adversely affect the public interest and that the action of the commission in refusing its approval thereof was arbitrary and unreasonable.

The orders of the commission and of the Superior Court are reversed and it is directed that the commission approve the sale and merger.