Pennsylvania Railroad Company *v.* Pennsylvania Public Utility Commission, Appellant.

Argued April 28, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

reargument refused June 3, 1959.

*Edward Friedman,* Deputy Attorney General, with him *Louis J. Carter* and *Edward Munce,* Assistant Counsel, and *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellant.

*David Berger,* City Solicitor, with him *James L. J. Pié* and *Alan Miles Ruben,* Assistant City Solicitors, for City of Philadelphia, intervening appellant.

*Mead J. Mulvihill, Jr.,* Assistant City Solicitor, with him *David Stahl,* City Solicitor, for City of Pittsburgh, intervening appellant.

*Windsor F. Cousins,* with him *John B. Prizer,* for Pennsylvania Railroad Company, appellee.

*George C. Doering, David P. Reese, Gordon E. Neuenschwander,* and *Lockwood W. Fogg, Jr.,* for various railroads, interested parties, under Rule 46.

OPINION BY MR. CHIEF JUSTICE JONES, May 18, 1959:

The order of the Superior Court, purporting to abrogate so much of the Public Utility Commission's Rule 10 of its Railroad Regulations as "requires application to and approval by the Commission 'prior to the removal, elimination, or substantial change in the schedule of any passenger train . . .' ", must be vacated. The matter was *coram non judice.* The Superior Court was, therefore, without jurisdiction to entertain the appeal.

The attempt of The Pennsylvania Railroad Company, as appellant, to have the Superior Court review the Commission's Rule 10 without the regulatory impact of the rule ever having been visited upon the appellant in any manner could, at most, evoke no more than an advisory opinion which our courts are not

organized to render. In *Knup v. Philadelphia,* 386 Pa. 350, 353, 126 A. 2d 399 (1956), we stated that it is "well established that a court will take jurisdiction only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons."

Rule 10 was promulgated by the Public Utility Commission in an exercise of its legislative authorization and is not judicially reviewable except that its enforcement be made the basis of a justiciable controversy. The same is equally true of rules of court. In *Tribune Review Publishing Co. Case,* 379 Pa. 92, 94, 113 A. 2d 861, it was plainly recognized that "This court does not entertain a proceeding which seeks an abstract, academic opinion as to the constitutionality of a *statute.* It acts only in a case in which the application of the statute *to an actual situation* creates a cause of action which may then be asserted by a litigant affected thereby. What is thus true in regard to a *statute* is equally true of a *rule of court.*" This jurisdictional situation is not one bit different when judicial opinion is sought with respect to an unapplied regulation which a governmental administrative body, acting pursuant to its statutory authority to prescribe in relevant regard, has promulgated.

The Superior Court's appellate jurisdiction rests exclusively in express statutory authorization. Thus, it is, that orders of the Public Utility Commission are appealable to the Superior Court. Section 1101 of the Act of May 28, 1937, P.L. 1053, 66 PS §1431(a), provides that "Within thirty days after the service of any order by the commission . . . *any party to the proceedings affected thereby* may appeal therefrom to

the Superior Court." (Emphasis supplied). A proceeding before the Commission is instituted with the filing of a complaint. If the complaint be to a regulation promulgated by the Commission, it is cognizable only after the regulation has been applied to the complaining and allegedly aggrieved party. Section 1001 of the Act of May 28, 1937, P.L. 1053, 66 PS §1391, provides that "Any public utility . . . may complain of any regulation or order of the commission, *which the complainant is or has been required by the commission to observe or carry into effect.*" (Emphasis supplied). No such order was ever entered in this case. The appellant railroad had not been directed by an order of the Commission either to observe or carry into effect any ruling of the Commission under Rule 10 with respect to the appellant's scheduled train service. It is plain enough that there is no statutory authority for an appeal to the Superior Court from a regulation promulgated by the Public Utility Commission which has not been applied to the party seeking to invalidate it.

No emergency, real or feared, and no alleged hardship to a complaining party, however great, can justify a court's entertaining and passing upon a subject matter which is not within its jurisdictional competence. Nor can jurisdiction in such instance be acquired through counsel's failure to raise the question, which it is never too late to be interposed. Indeed, it is the primary duty of the court itself to raise the question of its jurisdiction of the subject matter if that has not otherwise been done.

The order of the Superior Court, entered November 14, 1958, is hereby vacated and set aside.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. JUSTICE BELL:

The Pennsylvania Public Utility Commission adopted on March 24, 1958, Rule 10, the pertinent parts of which are as follows: "Abandonment of Service. A certificate of public convenience evidencing the Commission's approval of the abandonment of intrastate passenger train service shall be obtained prior to the withdrawal of such service on any line of railroad.

"Curtailment of Service.* An application shall be filed with and approved by the Commission *prior to*** the removal, elimination, or substantial change in the schedule of any passenger train [with exceptions which are not here pertinent]."

The Pennsylvania Railroad Company removed several passenger trains between Philadelphia and Pittsburgh without obtaining prior approval of the Commission. The Railroad appealed to the Superior Court from Rule 10, instead of having an actual case with evidentiary facts presented to challenge the validity and applicability of the rule. The Superior Court sustained the appeal and reversed that part of Rule 10 which required application to and approval by the Commission prior to the removal, elimination, or substantial change in the schedule of any passenger train.

The management and operation of a railroad or other public utility is wisely vested in the corporation, not in the Public Utility Commission.*** It is well es-

---

* The same day the Public Utility Commission issued the following news release: "The Public Utility Commission today ordered railroads in Pennsylvania *for the first time* to file formal applications for approval to make passenger train service curtailment."

** Italics throughout, ours.

*** The Public Utility Commissioners have far less experience, and for this and other well known reasons are far less qualified to manage a railroad than are the officers and directors of the railroad.

tablished that a public utility has the right to manage its own affairs to the fullest extent consistent with the public interest, and while the State or the Public Utility Commission may regulate, "it is not the owner of the property of public utility companies and is not clothed with the general power of management incident to ownership": *Southwestern Bell Telephone Co. v. Public Service Commission*, 262 U. S. 276, 289. Also *Northern Pennsylvania Power Co. v. Pennsylvania Public Utility Commission*, 333 Pa. 265, 268, 5 A. 2d 133; *Coplay Cement Manufacturing Co. v. Public Service Commission*, 271 Pa. 58, 114 A. 649; *Lower Chichester Township v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 503, 511, 119 A. 2d 674; *Abington Electric Co. v. Pennsylvania Public Utility Commission*, 131 Pa. Superior Ct. 200, 198 A. 906; *Hostetter v. Public Service Commission*, 110 Pa. Superior Ct. 212, 168 A. 493. Until the promulgation of Rule 10, the position of the Commission had always been: "The adjustment of schedules to meet demand for service is primarily a function of management. This Commission will not intervene unless the rescheduling is unreasonable and adverse to the public interest.": *Diffenderfer v. Safeway Trails*, 31 Pa. P.U.C. 456. See also *City of Wilkes-Barre v. White Transit Co.*, 33 Pa. P.U.C. 758.

The Public Utility Commission has only the jurisdiction and the powers which are given it by the Legislature, expressly or by necessary implication: *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 145 A. 2d 172. While the Public Utility Commission is expressly authorized to supervise and regulate public utilities in the public interest,* its jurisdiction, powers, rules, orders and

---

* Act of May 28, 1937, P.L. 1053, Art. IX, §901, 66 PS §1341. Cf. *Reading and Southwestern St. Railway Co. v. Penna. Public*

regulations are subject to and are limited by the Constitution and the pertinent statutory and decisional law: *Lancaster Transportation Co. v. Penna. Public Utility Commission,* 169 Pa. Superior Ct. 284, 295, 82 A. 2d 291.

Section 202(d) of the Public Utility Law of 1937, 66 PS §1122(d), requires a certificate of public convenience "For any public utility to dissolve, or to abandon or surrender, *in whole or in part,* any service, right, power, franchise or privilege . . ."

The railroad contends that the removal, elimination or curtailment in its passenger train service is not an "abandonment" of service; that abandonment of service occurs only upon the removal or elimination of the *last* train; that there is no provision in the Public Utility Law requiring a railroad to obtain prior approval of a "curtailment" in its train service; and that §§404, 412, 413 and 1008, which expressly provide (respectively) for time schedules, standards of service, adequate service, and Commission orders after investigation—all, after reasonable notice and hearing—further demonstrate that the Public Utility Commission was without authority to promulgate the "curtailment" provisions of Rule 10.

It may help clarify the questions involved if we point out that the Railroads do not deny the power of the Commission to regulate passenger train service in Pennsylvania, or to require adequate service, or to require notice of proposed schedule changes in order that they may be investigated by the Commission, or to require, *after hearing,* trains to be restored or new trains to be put on and operated, if the evidence presented

at a proper hearing justifies such an order in the public interest. The question of whether the elimination of some trains amounts to "an abandonment of service in whole or in part", or merely "a curtailment", will often depend on the facts and may at times be difficult to determine. On the other hand, we cannot find any merit in the contention of the Railroads that abandonment of service occurs, under the Act, only upon the removal or elimination of the *last* train. This contention crashes head-on with the language of the statute, which, we repeat, requires a certificate of public convenience whenever "any public utility abandons . . . in whole or in part, any service . . ." Were the Railroad's contention on this point to prevail, the statutory words "in part" would be not only unnecessary but meaningless.

However, before we reach the merits, the question arises whether Rule 10 can be appealed from. The Railroads rely upon §1112, 66 PS §1442, which provides: "Whenever the commission shall make *any rule,* regulation, finding, determination, or order under the provisions of this act, the same shall be prima facie evidence of the facts found, and shall remain conclusive upon all parties affected thereby, unless set aside, annulled, or modified in an appeal to the Superior Court taken as provided in this act."

Rule 10 is clearly and undoubtedly a formal directive rule or order which is neither procedural nor interlocutory, and requires no further implementation by the Commission. Moreover, by its terms and under the Public Utility Law it has an important and punitive effect on the Railroads. Section 907 of the Law requires every public utility to "obey and comply with such regulations or orders"; and §1301 et seq. provides penalties for violation of or failure to comply with any regulation or final order of the Commission.

The majority opinion holds (a) that the Superior Court was *without* jurisdiction to entertain the appeal, and (b) the appeal would require merely an advisory opinion and for this reason should be dismissed. I believe that the majority are incorrect about the Court's jurisdiction. The Public Utility Law expressly gives to the Superior Court jurisdiction of appeals from *"any* rule, regulation or order" of the Public Utility Commission. Jurisdiction of the Court means jurisdiction of the cause of action and of the parties; it relates not to the merits of the controversy but solely (a) to jurisdiction over the defendant and (b) to the competency of the particular Court to determine controversies of the general class to which the case then presented for its consideration belongs, i.e. in this case the jurisdiction of the Superior Court to determine the powers and rules of the Public Utility Commission. Cf. *Skelton v. Lower Merion Twp.*, 298 Pa. 471, 473, 474, 148 A. 846; *Koontz v. Messer*, 314 Pa. 434, 172 A. 457. See also *Gardner v. Allegheny County*, 382 Pa. 88, 95, 114 A. 2d 491, and many cases cited therein. It is clear (a) that the Superior Court had jurisdiction over the defendant and (b) that that Court first had, and we in turn have, jurisdiction to determine whether the Public Utility Commission has in Rule 10 exceeded its statutory authority, and whether the Rule was for any reason invalid or unconstitutional. Whether an appeal will lie in this case directly from Rule 10 does not, in my judgment, go to the question of jurisdiction, but is akin to the question of whether an appeal should be considered by the Court because it is premature, or involves a matter that is interlocutory, or moot. In other words, the Superior Court clearly and unquestionably had jurisdiction over the subject matter and the parties; the present appeal is not void for lack of jurisdiction in the Superior Court and subsequently

in our Court; the appeal should not be quashed or the judgment of the Superior Court be vacated, but the appeal can and may be dismissed if we do not choose to exercise our jurisdiction until additional facts are presented in an actual case or until further action is taken by the Commission or by the Superior Court.

Entirely apart from whether the Superior Court lacked jurisdiction, as distinguished from whether it desired (in its discretion) to exercise its jurisdiction on the present state of the record—I agree with the *general* rule which is enunciated in *Knup v. Philadelphia,* 386 Pa. 350, 353, 126 A. 2d 399, where the Court said: ". . . it is . . . well established that a court *will take jurisdiction* only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons." However, that rule, like virtually all general rules, is subject to exceptions. This was specifically recognized in *Pennsylvania Railroad v. Driscoll,* 336 Pa. 310, 9 A. 2d 621, and in *Pennsylvania Railroad v. Schwartz,* 391 Pa. 619, 139 A. 2d 525, where this Court allowed a bill in equity to test the constitutionality of the Full Crew Act before it had been applied to the complainant or put into actual operation. Examples of recent authorities which recognized exceptions to the general rule are: *Scranton Spring Brook Water Co. v. Pennsylvania Public Utility Commission,* 165 Pa. Superior Ct. 286, 67 A. 2d 735; *Wortex Mills v. Textile Workers Union of America,* 369 Pa. 359, *370,* 85 A. 2d 851; *Columbia Broadcasting System, Inc. v. United States,* 316 U. S. 407; see also *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 87 A. 2d 480.

In the *Scranton Spring Brook Water Co.* case, the Superior Court allowed an appeal from the Commission's final order prescribing a Uniform System of Accounts, where the challenged order had never been actually applied to the complainant or to anyone.

*Columbia Broadcasting System, Inc. v. United States,* 316 U. S. 407, in principle rules the present appeal on the question of jurisdiction. In that case complainant brought a bill in equity to set aside an order of the Federal Communications Commission which provided that there shall be no renewal of the licenses of stations whose contracts with a broadcasting network contain certain provisions proscribed by the Commission. The Supreme Court *reversed* the lower Court which had dismissed the complaint for want of jurisdiction. Complainant contended that the Commission had exceeded its statutory authority and that it was entitled to appeal the Commission's order, even though no action had been taken by the Commission to enforce its order or even to threaten complainant with punishment if it violated its order.

The language of Section 402(a) of the Communications Act of 1934, 47 U.S.C. §402(a) is similar to the provision of §1112 of our Public Utility Law.

The Court said (pages 416, 417, 418-419, 424-425) : "Section 402(a) makes applicable the provisions of the Urgent Deficiencies Act to 'suits to enforce, enjoin, set aside, annul, or suspend *any order* of the Commission' except orders 'granting or refusing an application for a construction permit for a radio station, or for a radio station license, . . .' Since the Commission's order neither grants, denies nor modifies any license, any review in advance or independently of an application for a station license must be under §402(a), and then only if the Commission's order promulgating the regulations is an 'order' within the meaning of this section.

". . . The regulations are not any the less reviewable because their promulgation did not operate of their own force to deny or cancel a license. It is enough that failure to comply with them penalizes licensees, and appellant, with whom they contract. If an administrative order has that effect it is reviewable and it does not cease to be so merely because it is not certain whether the Commission will institute proceedings to enforce the penalty incurred under its regulations for non-compliance. Assigned Car Cases, [274 U. S. 564]; A. T. & T. Co. v. United States, supra.

". . . The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control."

Assuming, arguendo, that—notwithstanding the broad sweeping all-inclusive language which gives a right to appeal to the Superior Court from *any* rule or order of the Public Utility Commission—an appeal, generally speaking, will not lie from the promulgation of an order or rule such as Rule 10, except in a case where the rule has been actually applied to a litigant—the facts are clear (1) that all parties in interest agree that the Superior Court had jurisdiction to hear this case and request us to determine the validity of Rule 10 upon the present record, and (2) the proposed threatened curtailment of passenger train service by the Railroads is of tremendous importance and a serious continuing threat to the traveling public, and (3) a decision on the merits will avoid a multiplicity of hearings and investigations, and (4) an actual case arising under Rule 10 would likely take such a long

time to be decided by the Commission and thereafter appealed to the Courts as to jeopardize the interests of the public and cause irreparable damage to the Railroads. Because of all of these facts I would sustain the appeal and determine the validity or invalidity of Rule 10 on the record before us.

Considering this appeal on its merits there is a real distinction between the abandonment of a service in whole or in part, and the curtailment of service by the removal or elimination of one or several trains. The provision of Rule 10 relating to curtailment of service is, on its face, clearly beyond the power of the Public Utility Commission and is therefore an invalid exercise of the Commission's powers.

However, the Commission is not powerless to take swift and appropriate action to deal with the serious situation with which the public is threatened. It has two obvious remedies. One of these remedies is (a) to schedule immediate hearings to determine whether to approve the elimination of certain trains, or whether to require one or more of these trains to be restored; and (b) to make a prompt decision thereon. Notwithstanding the volume of business before the Commission, the public can be adequately protected and the railroads can be relieved of great and irreparable damage by the Commission's giving *priority* to the hearings and decisions in cases involving a substantial curtailment of train service.

For these reasons I would affirm the Order of the Superior Court.