Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Plaintiff, and County of Blair, City of Altoona and Township of Logan, Intervening Plaintiffs v. Commonwealth of Pennsylvania, Department of Transportation, Defendant.

556

Argued February 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*R. Knickerbocker Smith, Jr.,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for plaintiff.

*Marion D. Patterson, Jr., N. John Casanave* and *Bertram Leopold,* for intervening plaintiffs.

*Herbert G. Zahn,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, for defendant.

OPINION BY PRESIDENT JUDGE BOWMAN, May 21, 1974:

This original jurisdiction case is before us on preliminary objections filed by the Pennsylvania Department of Transportation (PennDOT) to a complaint in mandamus filed by the Pennsylvania Public Utility

Commission (PUC) seeking to enforce compliance with an outstanding PUC order dated May 23, 1972, against PennDOT. This order required PennDOT to undertake, at its initial cost and expense, a program of inspection of the Eighth Street-Juniata Bridge in Logan Township, Blair County, in order to determine the structural adequacy and load-carrying capacity of said bridge. Also, PennDOT was directed to undertake a corridor study[1] of the affected area at its initial cost and expense. This order was served on PennDOT on May 26, 1972.

The May 23, 1972, order of the PUC was not appealed from as provided by law, but the substance of that order was the subject of appeal in a companion case docketed to No. 1197 Commonwealth Docket 1973. That appeal was quashed upon motion by the PUC in *Pennsylvania Department of Transportation v. Public Utility Commission*, 13 Pa. Commonwealth Ct. 550, 320 A. 2d 403 (1974), filed simultaneously herewith.[2]

The narrow issue now before us is whether the PUC may properly proceed against PennDOT in mandamus to compel compliance with its May 23, 1972, order. Resolution of this issue requires construction of the statute which the PUC asserts gives it authority to institute the instant mandamus proceedings.

PUC relies on Section 903 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, art. IX, *as amended*, 66 P.S. §1343 (Supp. 1973-1974). It provides: "Whenever the commission shall be of opinion that any person or corporation, including a municipal

---

[1] This is an engineering study of sufficient scope and extent and considering all relevant factors, designed to determine whether alterations are required in the type, size and location of the crossing, the approaches thereto at its points of connection with state highways.

[2] The facts stated in that case set the stage for the present controversy.

corporation . . . has failed . . . to obey any . . . order made by the commission . . . then and in every such case the commission may institute in the [Commonwealth Court], injunction, mandamus, or other appropriate legal proceedings, to restrain such violations of the provision of this act, or of the regulations, or orders of the commission, and to enforce obedience thereto. . . ."

PennDOT has only one meritorious preliminary objection. PennDOT contends that actions brought by PUC under authority of Section 903 are limited to actions against persons or corporations (including a municipal corporation), and that neither the Commonwealth nor the Department of Transportation can be found within the class of defendants against which the PUC is authorized to enforce its order under Section 903. The definitional subsections of the Public Utility Law contain specific definitions of the terms "corporation," "municipal corporation" and "person" in Sections 2(9), 2(15) and 2(16), respectively, 66 P.S. §§1102(9), 1102(15) and 1102(16). Neither the Commonwealth nor the Department of Transportation is included in any of those subsections.

It is well settled that where authority is conferred upon an extra-judicial body, not in the course of the common law, the legislative grant of power to act in any particular case must be clear. This proposition has been applied to the PUC in *N.A.A.C.P. v. P.U.C. and Philadelphia Electric Company,* 5 Pa. Commonwealth Ct. 312, 320-21, 290 A. 2d 704, 709 (1972).

Considering the language of Section 903 and the above mentioned definitional subsections of the Public Utility Law, the PUC cannot find in these statutory provisions the necessary clearly granted power to proceed in mandamus against PennDOT.

The PUC, however, also points to Section 409(c) and Section 902 of the Public Utility Law as supportive

of its contention that Section 903 afforded it such power and authority. Section 409(c) of the Public Utility Law, 66 P.S. §1179(c), provides: "(c) Upon its own motion or upon complaint, the commission shall have *exclusive power* after hearing . . . to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be abolished upon such reasonable terms and conditions as shall be prescribed by the commission. . . . The *commission may order the work* of construction, relocation, alteration, protection, or abolition of any crossing aforesaid *to be performed in whole or in part* by any public utility or municipal corporation concerned or *by the Commonwealth."* (Emphasis added.) Section 902 of the Public Utility Law, 66 P.S. §1342, provides: "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and authority, and *it shall be its duty, to enforce, execute, and carry out . . . orders. . . .* The express enumeration of the powers of the commission in this act shall not exclude any power which the commission would otherwise have under any of the provisions of this act." (Emphasis added.)

PUC argues that in light of Sections 409(c) and 902, the power of the PUC to institute mandamus against the Commonwealth may be reasonably implied into Section 903. It asserts that if Section 903 is construed to prohibit the PUC from instituting actions to enforce its orders against Commonwealth departments, the effect of its orders, clearly authorized by Section 409, is nugatory, which would frustrate the legislative intent to confer "exclusive power" under Section 409 and to enforce its authority as expressed under Section 902. We disagree.

Section 903 is not the only enforcement provision of the Public Utility Law, and it must be read together with Section 904, 66 P.S. §1344. Section 904 provides:

"The Attorney General . . . *shall also,* upon request of the commission, or upon his own motion, *proceed* in the name of the Commonwealth, by mandamus, injunction, or quo warranto, or other appropriate remedy at law or in equity, *to restrain violations* of the provisions of this act, or of the regulations or *orders of the commission,* or the judgments, orders, or decrees of any court, *or to enforce obedience thereto.*" (Emphasis added.)

The clear intent of the legislature was to confer additional broad powers of enforcement upon the Attorney General, if the commission would choose not to act or would be unable to act because of its limited powers of enforcement under Section 903. In addition to the broad power conferred upon the Attorney General, the legislature has also placed a duty squarely upon the Attorney General to proceed, *at the commission's request,* in the name of the Commonwealth to enforce obedience to the orders of the PUC. This mandatory duty, as evidenced by the statutory language "shall," gives to the PUC a correlative right to expect the Attorney General to enforce PUC orders upon its request.

Since there is an appropriate vehicle through which unappealed, and hence final, orders of the PUC may be enforced by the commission against Commonwealth departments, a judicial recognition that Section 903 does not confer power and authority in the PUC to institute mandamus against PennDOT neither renders PUC orders nugatory nor renders legislative intent ineffective.

Accordingly, we enter the following

## ORDER

Now, May 21, 1974, preliminary objections filed by the Pennsylvania Department of Transportation against the Pennsylvania Public Utility Commission's

complaint in mandamus, docketed to No. 1240 Commonwealth Docket 1973, are hereby sustained and complaint is dismissed with prejudice.