Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 12, 1978, before President Judge BOWMAN and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, DISALLE and MACPHAIL. Judges CRUMLISH, JR. and CRAIG did not participate.

*George D. Wenick,* Assistant Attorney General, with him *Herbert G. Zahn,* Assistant Attorney General, and *Robert W. Cunliffe,* Deputy Attorney General.

*Candice N. Kreiger,* Assistant Counsel, with her *John B. Wilson,* Deputy Chief Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, December 1, 1978:

Presently before us is the Pennsylvania Public Utility Commission's (PUC) motion to quash a petition for review filed by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT).

For the reasons stated below, we dismiss the motion to quash.

The facts giving rise to PennDOT's petition for review are not in dispute and shall be only skeletally related. In September, 1972, PennDOT filed with the PUC a complaint alleging that a certain bridge in Montgomery County, carrying vehicular traffic over and above certain railroad tracks, was in a state of disrepair and requesting that the PUC approve Penn-DOT's plan of repair. In January, 1974, the PUC issued an order approving PennDOT's plan and directing PennDOT, at its initial cost and expense, to repair the bridge in accordance with said plan. In December, 1974, PennDOT filed with the PUC a petition seeking modification of the January, 1974 order, alleging, *inter alia*, that additional inspection of the bridge revealed such continued deterioration of the structure as to render the original plan of repair impracticable. After formal hearing, the PUC on October 21, 1975, granted PennDOT's modification petition and directed PennDOT to prepare and submit to the PUC, within twelve months of the service date of said order, a detailed plan and estimate of costs for the bridge's reconstruction.

On November 12, 1976, the Borough of Conshohocken—which, because of its propinquity to the bridge, may participate in an allocation of reconstruction costs—filed with the PUC a "letter petition" alleging that PennDOT had not complied with the October 21, 1975 order and praying that the PUC request the Attorney General to enforce said order against PennDOT. On December 16, 1976, PennDOT filed with the PUC a petition for modification of the October 21, 1975 order, in the nature of a time extension.

After public hearing on said letter petition and on PennDOT's petition, the PUC issued an order on

November 22, 1977,[1] directing, *inter alia*, that Penn-DOT complete repairs to the bridge surface and adjacent sidewalks within sixty days of date of service of the order, and that PennDOT submit to the PUC detailed plans and estimates for costs of the bridge reconstruction within six months of said date of service. Also contained in the order was the following language: "Failure to strictly comply, within the time periods prescribed, shall result in the institution of legal proceedings against [PennDOT] for enforcement of this Order. . . ." It is from this order that PennDOT has filed the petition for review to which the PUC then filed the instant motion to quash.

The argument advanced by the PUC in support of its motion to quash is as follows: PennDOT's petition for review was filed by the Attorney General. Because the Attorney General has a statutorily mandated duty to enforce the PUC order of November 22, 1977 against PennDOT, an "irreconcilable conflict of interest" is created by permitting the Attorney General to represent PennDOT in a petition for review of the same PUC order.

The PUC is correct in its premise that the Attorney General has a statutorily mandated duty to enforce the order in question, should the necessity for enforcement proceedings arise. In *Pennsylvania Public Utility Commission v. Department of Transportation*, 13 Pa. Commonwealth Ct. 555, 320 A.2d 400 (1974),[2] we held that the PUC had no authority un-

---

[1] This order was entered on January 9, 1978.

[2] The PUC advances alternatively that we reconsider our holding in *Pennsylvania Public Utility Commission v. Department of Transportation*, 13 Pa. Commonwealth Ct. 555, 320 A.2d 400 (1974), and interpret Section 902 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1342, now Section 501(a) of the Public Utility Code (Code), 66 Pa. C.S. §501(a), to confer upon the PUC's "own independent legal staff" the power and duty

der Section 903 of the Public Utility Law, 66 P.S. §1343,[3] to enforce a PUC order *against the Common-wealth* because the Commonwealth was not within the class of defendants specifically named in that section. We further held in *Department of Transportation, supra* at 560, 320 A.2d at 403, that Section 904 of the Public Utility Law, 66 P.S. §1344,[4] when read together with Section 903, places "a duty squarely upon the Attorney General to proceed, at the commission's [PUC's] request . . . to enforce obedience [of the Commonwealth] to the orders of the PUC." (Emphasis omitted). The mandatory word "shall" in Section 904, we held, "gives to the PUC a correlative right to expect the Attorney General to enforce PUC orders upon its request." *Id.*

The PUC is incorrect in its conclusion, however, that an irreconcilable conflict of interest is therefore created by permitting the Attorney General to represent PennDOT in pursuing this petition for review. The PUC argues that *York v. Pennsylvania Public Utility Commission,* 449 Pa. 136, 295 A.2d 825 (1972), wherein the issue of conflict of interest on the part

---

to enforce PUC orders against the Commonwealth. We believe that *Department of Transportation, supra,* was properly decided and are unpersuaded by the PUC's argument that the addition of Section 9.1 to the Public Utility Law by Section 12 of the Act of October 7, 1976, P.L. 1075, 66 P.S. §460.1, now Section 306 of the Code, 66 Pa. C.S. §306, should alter our decision in that case. In enacting Section 9.1, the legislature created the office of chief counsel to the PUC and provided for the establishment of a "multi-function legal staff." However, as counsel for PennDOT correctly points out, the legislature did not concurrently alter the language of Sections 903 and 904, now Sections 502 and 503 of the Code, 66 Pa. C.S. §§502, 503, which prescribe enforcement procedures. ·

[3] A similar provision is now Section 502 of the Code, 66 Pa. C.S. §502.

[4] A similar provision is now Section 503 of the Code, 66 Pa. C.S. §503.

of the Attorney General was addressed, is close enough to the instant case factually to warrant a finding of conflict of interest here. We disagree.

In *York, supra,* the conflict of interest issue was whether the request of the Attorney General to intervene as an appellant in this Court in an appeal from a PUC order was properly refused. In *York,* the PUC order in question had approved the merger of three telephone companies. The City and County of York, complainants before the PUC, appealed that order to this Court. Two days prior to oral argument, the Attorney General petitioned this Court for leave to intervene as an appellant on behalf of the Commonwealth. Although we permitted the Attorney General to appear and argue on the merits of the appeal subject to later consideration of the intervention petition, we subsequently, after argument on that petition, denied said petition. The Supreme Court affirmed, quoting extensively from our opinion reported at 3 Pa. Commonwealth Ct. 270, 281 A.2d 261 (1971).

Examination of the reasoning in *York* reveals that the intervention of the Attorney General was refused because neither of the statutory bases relied upon by the Attorney General supported his intervention. We held that Section 1 of the Act of May 28, 1915, P.L. 616, *as amended,* 12 P.S. §145, did not permit intervention because the Commonwealth had "no real interest in this case except through the Public Utility Commission. . . ." 3 Pa. Commonwealth Ct. at 282, 281 A.2d at 267. We further held that Section 1104 of the Public Utility Law, 66 P.S. §1434,[5] did not permit intervention because the Commonwealth did not come within the meaning of the terms "person," "corporation" or "municipal corporation" contained therein. *Id.* at 286, 281 A.2d at 269. Moreover, the

---

[5] Repealed by Section 20 of the Act of October 7, 1976, P.L. 1075.

"irreconcilable conflict of interest" of which we spoke in *York* would have been created in large part because, at that time, the Attorney General had the statutory duty to appoint counsel to the PUC. *See* Section 9 of the Act of March 31, 1937, P.L. 160, formerly 66 P.S. §460, repealed by Section 12 of the Act of October 7, 1976, P.L. 1075 (*see* note 2, *supra*). We reasoned:

> Since the Attorney General has the power to appoint counsel for the Commission, he likewise has the power to remove such counsel. If the Attorney General were permitted to intervene in opposition to the Commission's order, and as an opposing advocate to the counsel for the Commission, who is subject to removal by the Attorney General, then the Commission would be denied the effective representation of counsel to which it is entitled by statute. We cannot sanction such an irreconcilable conflict of interest. (Footnote omitted.)

3 Pa. Commonwealth Ct. at 285-86, 281 A.2d at 268.

Several crucial factors readily distinguish the case at bar from *York*. In *York*, the Attorney General was seeking *intervention* in an appeal to advocate a position which he, independently, had determined to be in the best interest of the Commonwealth. He was not acting on behalf of any particular Commonwealth department or agency. Furthermore, no statutory authority existed for his intervention. Inasmuch as an irreconcilable conflict of interest would have been created by his intervention, it would have derived from the fact that he had the power to remove PUC counsel advocating a contrary legal position.

In the case at bar, we are not confronted with an attempt to intervene to advocate some independent determination of the best interest of the Commonwealth. Rather, the Attorney General is fulfilling his

statutorily mandated duty under Section 903(b) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §293(b) "[t]o represent the Commonwealth, or any department . . . thereof, in any litigation to which the Commonwealth or such department . . . may be a party. . . ." Moreover, it certainly cannot be argued, in light of the fact that PUC counsel are no longer appointed by the Attorney General, that an irreconcilable conflict exists as framed in *York.*

Finally, we find no irreconcilable conflict of interest in the fact that the Attorney General, now pursuing PennDOT's petition for review on the merits, may, at some future stage in these proceedings, be called upon by the PUC to enforce its order against PennDOT. It has long been recognized in this Commonwealth that there are situations which simply require the Attorney General to wear two hats, as it were. As Judge WOODSIDE, who himself once served as Attorney General, wrote in *Ault Unemployment Compensation Case,* 188 Pa. Superior Ct. 260, 262-63 n.1, 146 A.2d 729, 730-31 n.1 (1958):

> [W]e recognize that the duties of an attorney general cannot always be measured by the same yard-stick used to measure the duties of private counsel. There are occasions where an attorney general is required to represent both sides of a case, as, for example, when the Highway Department appeals from a Public Utility Commission order. In such cases he cannot believe both sides to be right, and yet he is charged by statute with presenting both sides to the court.

Similarly, in this case, the legislature has charged by statute that the Attorney General represent PennDOT in its petition for review and also that, should enforcement become necessary, he represent the PUC

in enforcing its order against PennDOT. The legislature has determined that the Attorney General is capable of performing different roles at different stages in the proceedings.

Accordingly, we dismiss the PUC's motion to quash.

### ORDER

Now, December 1, 1978, the motion to quash filed by Pennsylvania Public Utility Commission is hereby dismissed.